## ARNOLD & CAMPBELL *vs.* CARPENTER & LANSING.

The lien of an unpaid vendor retaining possession of the goods sold is not a right which the vendor acquires, but one which he retains. In its nature it is a right undisposed of in and to the goods sold to the vendee who is in default.

Hence, when enforcing this lien, the vendor makes a second sale of the goods, the second purchaser is not liable in trover or in replevin to the first purchaser, so long as the latter is in default in payment.

A. sent lumber to Providence consigned to himself. It was for some months in a warehouse for A., who then gave to W. a receipted bill for the lumber and an order for its delivery on payment of charges, and received from W. a note, which turned out worthless. W. sold the lumber to B. A. revoked the delivery order, sold the lumber to C., who was a *bonâ fide* purchaser for value without notice. Neither W. nor B. ever offered to pay the price of the lumber or the charges on it, or ever presented A.'s order for delivery. A. retained possession of the lumber until it was delivered to C.

In replevin for the lumber brought by B. against C.:

*Held*, that the action would not lie.

EXCEPTIONS to the Court of Common Pleas.

This action was replevin, and was heard in the Court of Common Pleas without a jury, jury trial being waived by the parties. Judgment was given for the defendant for possession, and the plaintiffs excepted to the rulings of the court.

The facts involved are stated in the opinion of the court.

*Charles H. Page & Franklin P. Owen*, for plaintiffs, cited *Chase et al., Administrators,* v. *Garrett,* 1 Central Reporter, 331 ; *Morgan* v. *King,* 28 W. Va. 1; *Worley, ex relat. Standley,* v. *Watson,* 4 Western Reporter, 919; *Keil et al.* v. *Harris,* 5 Central Reporter, 865 ; *Hall* v. *Dimond,* 63 N. H. 565.

*Nathan W. Littlefield, Charles A. Wilson, Thomas A. Jenckes, & Warren Goddard, Jun.,* for defendants.

*July* 13, 1889. DURFEE, C. J. The plaintiff, to have been entitled to replevy the lumber in suit when he did, must then have been entitled to the immediate possession of it. It belonged originally to Clarke & Co., of Boston. December 10, A. D. 1886, they sent it by railroad to Providence, consigned to themselves. It remained in the car on the tracks for a while, and was then turned over to warehousemen, who held it for Clarke & Co. until June 24, A. D. 1887, and then delivered it, pursuant to the order of Clarke & Co., to the defendant. It originally came to Providence, however, in a course of dealing between Clarke & Co. and one John H. Warner, under which Clarke & Co. were to send it to Providence consigned to themselves, and Warner, on paying cash for it, was to have a delivery order on the railroad company for it on payment of freight and charges. For the lumber in suit Warner gave Clarke & Co. a note, representing it to be as good as cash, and received a receipted bill, and an order for delivery on payment of freight, no other charges having then accrued. Warner, according to his own testimony, sold it December 20, A. D. 1886, to the plaintiffs, agreeing to pay the freight himself, but neither the plaintiffs nor Warner ever presented the delivery order or paid the freight. The note given by Warner was worthless, and he was insolvent. March 25, A. D. 1887, Clarke & Co., revoking their prior order, directed the warehousemen to hold the lumber subject to their order. June 24, A. D. 1887, Clarke & Co. sold it to the defendants, giving them the order on which it was de-

livered to them. The defendants were *bonâ fide* purchasers for value without notice. It does not appear that either the plaintiffs or Warner ever paid or offered to pay the freight or price to them or to Clarke & Co.

The court below found as fact that Clarke & Co. remained in possession of the lumber until it was delivered to the defendants, the possession of the warehousemen being their possession, and the finding being conclusive here. This being so, the question is, whether the plaintiffs were entitled to sue the defendants in replevin when they did. The note given by Warner as equivalent to cash being worthless, Clarke & Co., never having parted with their possession, were entitled to countermand the delivery order and retain the lumber for the price as well as for the freight, by virtue of their lien as vendors. Their having given a receipted bill and the delivery order would not defeat this right. *Keeler* v. *Goodwin*, 111 Mass. 490, 492; *Solomons* v. *Chesley*, 58 N. H. 238; *Voorhis* v. *Olmstead*, 66 N. Y. 113; *Southwestern Freight & Cotton Press Co.* v. *Stanard*, 44 Mo. 81; *M'Ewan* v. *Smith*, 2 H. L. 309; *Griffiths* v. *Perry*, 1 El. & E. 680; 2 Schouler on Personal Property, § 539. If they had continued in possession without selling, the plaintiffs could not have maintained replevin against them until the price and freight were paid, for until then a present right of possession would not accrue to the plaintiffs. Have the plaintiffs a better right against the defendants, who are *bonâ fide* purchasers? The lumber might have been sold to the defendants so as to give them an unquestionably good title; for, according to American authority, Clarke & Co. were entitled under their lien as vendors, by reason of Warner's default, to sell it in satisfaction of the lien, after giving Warner reasonable notice of their intention to do so. 2 Schouler on Personal Property, §§ 549, 550. It does not appear that Clarke & Co. gave any notice. In *Ullman* v. *Kent*, 60 Ill. 271, however, it was held that notice is not necessary to a valid exercise of the right of sale. There are also cases which hold that the continued default of the vendee entitles the vendor to treat the sale as abandoned, and resume his ownership. *Bagley* v. *Findlay*, 82 Ill. 524; *Duston* v. *McAndrew*, 44 N. Y. 72; *Westfall* v. *Peacock*, 63 Barb. S. C. 209, 213; *Hayden* v. *Demets*, 53 N. Y. 426, 431; 2 Benjamin on Sales, § 1060. Under

these decisions the title of the defendants would be good.  But
supposing notice to have been necessary, does it follow that the
plaintiffs are entitled to maintain their action ?  They would have
the right if the vendor's lien were no better than the lien which
an artisan or an innkeeper or a warehouseman acquires in his em-
ployment, the latter lien being a mere right of retainer for pay,
without any auxiliary right of sale.  To sell under such a lien is
a conversion which entitles the owner, without previous payment
or tender, to sue the seller in trover and the buyer in trover or
replevin.  2 Benjamin on Sales, § 1066 ; *Mulliner* v. *Florence*,
L. R. 3 Q. B. Div. 484 ; *Johnson* v. *Credit Lyonnais Co.* L. R.
3 C. P. Div. 32 ; *M'Combie* v. *Davies*, 7 East, 5.  There is an
obvious difference between the two kinds of lien.  The artisan or
innkeeper acquires his lien by having and retains it by keeping
possession.  When his possession is gone his lien is gone, and the
owner's right of possession instantly reverts to him.  The vendor's
lien is not a right which he acquires, but a right which he retains,
the vendee never having had either possession or right of posses-
sion, in default of payment or tender.  It is in the nature of an
undisposed of right in and to the property sold to the defaulting
vendee.  " An unpaid vendor," says Mr. Benjamin, " with the
goods in his possession, has more than a mere lien on them ; he
has a special property analogous to that of a pawnee."  2 Benja-
min on Sales, § 1876.  A pawnee has an assignable interest.  " In
the case of a resale," to quote Mr. Benjamin again, " a buyer in
default cannot maintain trover against the vendor, being deprived
by his default of that right of possession without which trover will
not lie ; " § 1073, citing *Milgate* v. *Kebble*, 3 M. & G. 100, and
*Lord* v. *Price*, L. R. 9 Exch. 54, which fully support the text.
He also says that, " where there has been a resale, the title of the
second purchaser depends on the fact whether the first buyer was
in default, for if not, we have seen that he may maintain trover,"
evidently implying that, if the first buyer be in default, the pur-
chaser at the second sale acquires a good title, or at least immu-
nity from suit in trover or replevin.  We do not see how, upon
principle, if trover will not lie against the seller, either trover or
replevin will lie against the purchaser, and that it will not, see
*Lord* v. *Price*, *supra*.  The conclusion of Mr. Schouler on this

point is stated thus : " The buyer's default, followed by the seller's resale, seems to constitute a rescission of the contract in such sense that the buyer is not permitted to follow the goods into the new purchaser's hands, and reclaim them as his own, but must look to his own adjustment of damages with the seller for indemnity, if indemnity be his due." 2 Schouler on Personal Property, § 547. This doctrine seems to be reasonable, though it has probably never passed into decision. However that may be, we think the doctrine of the cases goes at least to this extent, namely, that the second purchaser is not liable in trover or replevin to the first buyer, so long as the latter is in default in the matter of payment. It follows that the plaintiffs cannot maintain their action, for, as sub-vendees, they have no better right than the original vendee, there being nothing by way of estoppel to better their position. 2 Benjamin on Sales, § 1039.          *Exceptions overruled.*