NELLIE G. FLECKHAMER *vs.* MARY E. FLECKHAMER *et al.*

DECEMBER 9, 1929.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

Per Curiam. This is a bill in equity seeking to establish a constructive trust on different parcels of real estate, the purchase price of which was paid, in part at least, from misappropriated funds. The bill seeks also a decree *in personam* against respondent Mary E. Fleckhamer for money which she received from the proceeds of a parcel of said real estate. After hearing on bill, answer and proof, the Superior Court entered a decree dismissing the bill as to respondent Doyle and Fleckhamer and impressing a trust in favor of the complainant upon property referred to as the Scituate real estate for the sum of $1,950 subject to certain mortgages and taxes. The cause is before us (1) on complainant's appeal from the portions of the decree dismissing the bill as to Doyle and Fleckhamer; (2) on appeal of respondents Landin from the portions of said decree impressing a trust upon said Scituate real estate.

The complainant deposited in two savings banks in the joint names of her son, Albert L. Fleckhamer, and herself money which she received as a gift from her husband's mother. Although the bank books were intrusted to the son, it was agreed between him and his mother that he would not, during her lifetime, draw any of the money, but that on her decease the accounts would belong to him. The son in his lifetime was the husband of respondent Mary E. Fleckhamer. Without the mother's consent or knowledge the son drew from said accounts sums of money totaling $8,901. From the evidence it seems reasonably certain that a considerable portion of this money became a part of the purchase price of the Scituate real estate and the Barrington real estate which were purchased by the son in his own name and later transferred through a third person to himself and respondent Fleckhamer, his wife, as joint tenants. Upon the death of the son, his wife, as surviving joint tenant, became the sole owner of the legal title to both

parcels of real estate. She contributed nothing to the purchase price. The son died after a brief illness. Within about 48 hours before his death, and when he was *in extremis*, he said to his father: "Pa, I took Ma's money. I will make good after I get better. Will you take me home?" On April 29, 1927, the day following the son's funeral, the complainant together with respondent Fleckhamer, the son's widow, visited the banks in question, and the complainant learned of the son's withdrawals. On May 6, 1927, she delivered to respondent Fleckhamer a schedule of the unauthorized withdrawals and asked her what she was willing to do about it. She replied that she did not know but that she would call the complainant on the telephone and discuss the matter with her on the third day thereafter. Respondent Fleckhamer did not keep her promise to telephone, but, on the fourth day, May 10, 1927, conveyed both the Barrington and Scituate real estate to respondent August W. Landin with whom she was living. On June 9, 1927, Landin in turn conveyed the Barrington real estate to respondent Doyle. Landin attempted to sell the Scituate real estate also to Doyle but he refused to purchase because of an outstanding option. He did, however, loan Landin $1,500 and took as security a mortgage on the Scituate real estate.

The bill prayed for relief of three kinds: (1) the creation of a constructive trust in the Scituate real estate in favor of the complainant for the money unlawfully withdrawn by the complainant's son from the bank accounts and invested in this real estate; (2) the creation of a similar constructive trust, for the same reasons, in the Barrington real estate; and (3) a decree *in personam* against Mary E. Fleckhamer for the amount which as a donee she benefited by the unauthorized withdrawals.

The trial justice in his decision, on which said decree was based, granted the complainant relief with respect to the Scituate real estate. He found that the respondent Landin, as grantee, took the real estate with notice of the

complainant's claim and that, subject to the first mortgage of $1,200 and the second mortgage of $1,500, he held the equity in the property in trust for the complainant to the extent of $1,950, the amount of cash which the complainant's son had paid out in purchasing the property. As a basis for this holding, said justice found that an agreement existed between the complainant and her son that he would not withdraw money from either of said accounts during her lifetime; that the son in making the unauthorized withdrawals committed a breach of trust; that he invested $1,950 of the money thus wrongfully appropriated in the Scituate real estate and that, as Landin was not a *bona fide* purchaser of the real estate, the complainant was entitled to relief *in rem* as to said real estate.

Said justice denied the prayer of the bill of complaint for a decree *in personam* against respondent Fleckhamer compelling her to account for the funds which, as a donee, she received from the proceeds of her husband's unauthorized withdrawals from the savings accounts. The justice also denied the complainant's prayer for relief with respect to the Barrington real estate and the mortgage held by Doyle on the Scituate real estate, on the ground that complainant's equity was cut off by respondent Doyle's purchase of the property for value without notice.

After a careful examination of the record we are of the opinion that the trial justice was warranted in finding from the evidence that an agreement existed between the complainant and her son that he would not, during her lifetime, use any of the moneys in said joint accounts; that the son invested $1,950 of the money, drawn from said accounts, in the Scituate real estate; that respondent Landin was not a *bona fide* purchaser of said parcels of real estate and that respondent Doyle, as mortgagee of the Scituate property, paid value in good faith and, as grantee of the Barrington property, was a *bona fide* purchaser for value.

In considering the question whether Landin was a *bona fide* purchaser, said justice said: "I have no question in

mind, from the testimony I have heard and the attitude of Mr. Landin on the stand and Mrs. Fleckhamer, Jr., that she sought Mr. Landin's advice in the matter. I think he knew all about what was going on, I think he also saw a chance to make some money for himself . . . and was willing to take a chance."

There was little, if any, evidence tending to show knowledge on the part of Doyle. Some suspicion may arise from the fact that Landin's two transactions with Doyle were completed within a very short time. There can be no doubt that Landin desired to sell before the complainant commenced legal proceedings but there was no evidence tending to show that Doyle should have suspected a fraud had been committed by some one.

The testimony was conflicting on all of the issues of fact and, as we cannot say that any one of the findings of fact made by the trial justice is clearly erroneous, there is no reason for disturbing his findings. *Hall* v. *Hall*, 146 A. 415; *Gaynor* v. *Wax*, 146 A. 814.

Counsel for respondent Landin contends that as respondent Fleckhamer and her husband sold and conveyed for value the Scituate property to one Valiquette, who had no knowledge of the complainant's equities, and later repurchased said property, from him, they took title free from equities because their grantor, being a *bona fide* purchaser for value when he purchased from them, took free from equities and hence Landin acquired from respondent Fleckhamer title free from equities.

When said respondent Fleckhamer and her husband sold to Valiquette she and her husband took, as a part of the purchase price, a mortgage for $2,000 on said property. It thus appears that she and her husband retained in said property an interest to the extent of $2,000. When she and her husband repurchased, said mortgage was applied to the purchase price. The decree against said property was for only $1,950. Even if respondent Fleckhamer did not know until after her husband's death that misappropriated funds

formed a part of the purchase price of property, the title to which was taken by her husband and herself as joint tenants, she contributed nothing to the purchase price. Notes given by herself and husband as a part of the purchase price were paid from the proceeds of the property.

When respondent Landin purchased the Scituate property and the Barrington property he gave to respondent Fleckhamer, as a part of the purchase price, his promissory note for $2,260. She admits that this note was paid one month later. Complainant contends that this sum of $2,260 is a part of the proceeds of misappropriated funds; that said respondent paid no value therefor and consequently should be required to account to complainant for said sum.

At about the same time that the son purchased the Barrington property he drew from the joint account in the Industrial Trust Co. $2,500. It is reasonably certain that the purchase price of said property to the extent of $2,500, at least, was paid from funds wrongfully drawn from said joint account. The trial justice assumed, and apparently found, that complainant's money wrongfully drawn from one of the joint accounts was invested in the Barrington real estate. He was apparently of the opinion that respondent Fleckhamer did not know, at the time the funds were being drawn from the joint accounts and invested in real estate, that her husband was misappropriating his mother's money. In his decision said justice said, "it doesn't seem to me where the wife herself has apparently done nothing to bring the situation about, I don't think that warrants the Court in awarding an *in personam* judgment against the wife and I am going to deny that relief asked for in the Bill."

Respondent Fleckhamer did not pay value for the $2,260 which were proceeds from real estate purchased by her husband. The law is well settled that one cannot obtain by gift a good title to trust property; lack of notice is not sufficient to cut off equitable claims. Equities are cut off only when the trust property comes into the hands of a

*bona fide* purchaser for value without notice. See Pomeroy on Eq. (4th ed.) §§ 1048, 1051. Respondent Fleckhamer knew when she received said $2,260 that the money was the proceeds from funds which her husband had misappropriated. In addition to the principal sum she should be charged with interest thereon from the date of the receipt of the money.

The complainant's appeal from the portions of the decree dismissing the bill as to respondent Doyle is denied and dismissed. Complainant's appeal from the portions of the decree dismissing the bill as to respondent Fleckhamer is sustained. The appeal of respondents Landin is denied and dismissed.

The decree appealed from is modified by retaining the bill against respondent Fleckhamer and including in said decree a decree *in personam* against respondent Fleckhamer in favor of the complainant for $2,260 plus interest. In all other respects the decree appealed from is affirmed.

The parties may present for our approval a form for a decree to be entered in the Superior Court.

*William H. Edwards, Edwards & Angell,* for complainant.

*William S. Flynn, Edmund W. Flynn,* for respondents Fleckhamer and Landin.

*McGovern & Slattery,* for respondent Doyle.