**Robert SHAPPY**

v.

**DOWNCITY CAPITAL PARTNERS, LTD., et al.**

**No. 2008–175–Appeal.**

Supreme Court of Rhode Island.

June 16, 2009.

Timothy Dodd, Esq., for Plaintiff.

Patricia Buckley, Esq., Providence, Downcity Capital Partners, Ltd., Kate Moran, Esq., RESOL, LLC, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Justice FLAHERTY, for the Court.

The plaintiff, Robert Shappy, appeals from the Superior Court's grant of motions for summary judgment entered in favor of the defendants, Downcity Capital Partners, Ltd. and RESOL, LLC (collectively defendants).[1] Before this Court, the plaintiff contends that the issue of whether he was negligent when he signed a quitclaim deed that conveyed property to his son-in-law, Douglas P. Cataldo, is a question of fact that should have been decided by a jury. Therefore, the plaintiff argues that the hearing justice erred when he granted summary judgment in favor of the defendants. This case came before the Supreme Court for oral argument on May 13, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the parties' arguments and after considering the memoranda submitted by counsel, we are satisfied that cause has not been shown. Accordingly, we will decide the appeal at this time. For the reasons set forth in this opinion, we affirm the judgments of the Superior Court.

### Facts and Travel

On December 9, 2005, plaintiff signed a quitclaim deed that on its face conveyed real property at 87 Belfield Drive in Johnston to Cataldo. The plaintiff contends that Cataldo, who was a mortgage broker, fraudulently induced him into signing the instrument. He asserts that Cataldo accomplished that trickery by agreeing to help his father-in-law obtain pre-approval for a mortgage loan for another house that plaintiff had contracted to purchase, also

---

1. Final judgment was entered for Downcity on March 4, 2008, and plaintiff filed his notice of appeal two days later. However, final judgment did not enter in favor of RESOL until March 11, 2008. The plaintiff did not file a separate notice of appeal from this judgment. During oral argument, we requested that the parties submit memoranda addressing whether RESOL was properly before this Court, given that plaintiff filed his notice of appeal concerning RESOL from the judgment entered on Downcity's behalf on March 4, 2008. After reviewing the memoranda submitted by the parties, we are of the opinion that plaintiff has properly appealed from both the judgment entered against Downcity and RESOL. Although he filed his notice of appeal before final judgment was entered for RESOL, the hearing justice orally granted final judgment in favor of both defendants, and the notice of appeal lists both Downcity and RESOL as defendants.

on Belfield Drive. The plaintiff said that Cataldo told him that he might be required to pledge some property to secure pre-approval for the loan. Cataldo allegedly told his father-in-law that it was "only if we need it," and plaintiff insists that he relied on Cataldo's representations that the document was for this limited purpose. The plaintiff said that he did not believe that he was conveying the property to Cataldo, but instead thought that he was signing a document that merely verified that he owned it. However, he did concede that when Cataldo presented him with the document, he saw that it was entitled "Quit-Claim Deed," that it contained a notary clause, and that he did not read it in its entirety. He said that although he did not normally sign documents without first reading them, he did so on this occasion because he trusted his son-in-law.

It appears that Shappy's confidence was misplaced. On January 24, 2006, after Cataldo recorded the quitclaim deed in the Land Evidence Records, he entered into a term mortgage loan with Downcity, borrowing $110,000 and executing a promissory note that was secured by the property.[2] There seems to be no dispute that Downcity believed that the quitclaim deed was genuine, that it had been properly executed, and that Cataldo owned the property. On February 1, 2007, Cataldo defaulted on the terms of the promissory note with Downcity. Just over a month later, Cataldo granted a second mortgage on the property to RESOL to secure a loan in the amount of $50,000. RESOL also relied on the validity of the deed, properly recorded in the Land Evidence Records, and, like Downcity, it did not have any knowledge of Cataldo's purported fraud against his fa-

ther-in-law. As a consequence of Cataldo's default on the loan, Downcity scheduled a foreclosure sale for June 20, 2007.

The plaintiff learned of the foreclosure sale when he saw the notice of it in the newspaper. On June 15, 2007, he commenced an action in the Superior Court against Downcity and Cataldo. In his verified complaint, plaintiff asserted that Cataldo fraudulently induced him into signing the quitclaim deed and he requested punitive damages for this malicious conduct. The plaintiff also sought to enjoin Downcity's pending foreclosure sale and he requested that the court vacate and declare both the quitclaim deed and the mortgage deed to be void. Downcity answered the verified complaint, and it also filed a cross-claim against Cataldo for the amount owed under the loan.[3]

RESOL filed a motion to intervene in the case, and that motion was granted. RESOL then filed an answer and a cross-claim against Cataldo for the amount owed under the second loan secured by the property. On January 15, 2008, pursuant to Rule 56 of the Superior Court Rules of Civil Procedure, Downcity filed a motion for summary judgment with respect to plaintiff's claims against it as well as its cross-claim against Cataldo. Subsequently, RESOL joined in Downcity's motion. The plaintiff filed an objection to Downcity's motion for summary judgment. In an accompanying affidavit, plaintiff said that he had not intended to convey the property to Cataldo and that he believed that his signature on the quitclaim deed was merely part of the process to secure a loan for the property that he had agreed to purchase. The plaintiff also asserted, for the

---

2. The loan was for a term of one year at 16 percent interest, and was to be satisfied by a single payment on February 1, 2007.

3. A consent order was entered in the Superior Court on June 19, 2007, staying the foreclosure sale until further order of the court.

first time, that the language of conveyance was not present in the document when he signed it.[4]

The Superior Court held a hearing on Downcity's motion for summary judgment on March 3, 2008. The plaintiff did not dispute that Downcity and RESOL lacked any knowledge of Cataldo's allegedly fraudulent behavior. Instead, he relied on this Court's opinion in *Dante State Bank v. Calenda*, 56 R.I. 68, 183 A. 873 (1936), contending that even a bona fide purchaser may not enforce its rights under an instrument if the signer, who was fraudulently induced into signing the instrument, was free of negligence. The plaintiff contended that summary judgment did not lie because any negligence on his part in signing the quitclaim deed was a question of fact that must be decided by a jury. The defendants conceded that Cataldo fraudulently secured Shappy's signature on the quitclaim deed; however, they argued that plaintiff was negligent by signing the deed without completely reading it or, alternatively, by signing a blank deed. The defendants contended that such conduct demonstrated that plaintiff was negligent as a matter of law, thus making summary judgment appropriate.

The hearing justice first granted Downcity's motion on its cross-claim against Cataldo for the amount owed under the loan. Turning to the motion against plaintiff, the hearing justice ruled that Downcity and RESOL were bona fide purchasers who were unaware of any impropriety surrounding Cataldo's ownership of the property. The hearing justice said that plaintiff's actions "set in motion the instrumentality that ultimately here caused the bona fide purchasers to extend the financial accommodations they did to Mr. Cataldo in exchange for the promissory notes and the security received by them; that is to say, the first and second mortgages [on the property]." Therefore, the hearing justice granted summary judgment in favor of Downcity and RESOL. Final judgment was entered for Downcity on March 4, 2008. The plaintiff timely appealed. Final judgment was entered for RESOL on March 11, 2008.[5]

## Standard of Review

"This Court reviews the granting of summary judgment *de novo* and applies the same standards as the motion justice." *Carrozza v. Voccola*, 962 A.2d 73, 76 (R.I. 2009) (quoting *McAdam v. Grzelczyk*, 911 A.2d 255, 259 (R.I.2006)). Summary judgment is appropriate when, after viewing the admissible evidence in the light most favorable to the nonmoving party, "no genuine issue of material fact is evident from 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' and the motion justice finds that the moving party is entitled to prevail as a matter of law." *Smiler v. Napolitano*, 911 A.2d 1035, 1038 (R.I.2006) (quoting Rule 56(c)).

## Analysis

Based on our *de novo* review, we conclude that plaintiff has failed to establish a genuine issue of material fact and

4. That provision reads as follows:
   "I, Robert Shappy of the town of Johnston, County of Providence and State of Rhode Island, for consideration paid, grant to Douglas P. Cataldo, of the City of Warwick, County of Providence [*sic*] and State of Rhode Island, as Sole Tenant, with Quit Claim COVENANTS

   "SEE EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF."
   "Exhibit A" is a physical description of the property.

5. On June 30, 2008, default judgment was entered against Cataldo on RESOL's cross-claim.

that defendants are entitled to judgment as a matter of law. The hearing justice said that defendants were "essentially bona fide purchasers without knowledge or any information * * * that Mr. Cataldo was anything other than the full fee owner of the real estate situated at 87 Belfield Drive." The defendants were entitled to rely on the validity of the deed as recorded in the Land Evidence Records. *See* 27 *Williston on Contracts* § 70:47 at 343 (Richard A. Lord 4th ed. 2003) (purchasers of real property "have a right to rely on recorded public records"). The purpose of recording statutes is to provide protection to those diligent enough to conduct a search of the title records. *See Domarad v. Fisher & Burke, Inc.,* 270 Cal.App.2d 543, 76 Cal.Rptr. 529, 536 (1969) (describing purpose of recording statutes as giving "notice to prospective purchasers or mortgagees of land of all existing and outstanding estates, titles or interest, whether valid or invalid, that may affect their rights as bona fide purchasers"). Rhode Island has long recognized the defense of bona fide purchaser for value and the protections to which such a purchaser is entitled. *See, e.g., Coombs v. Aborn,* 29 R.I. 40, 68 A. 817 (1908); *Babcock v. Wells,* 25 R.I. 23, 54 A. 596 (1903); *Arnold v. Carpenter,* 16 R.I. 560, 18 A. 174 (1889). A bona fide purchaser is a purchaser for value, in good faith, and without any knowledge of adverse claims.[6] *See Fleckhamer v. Fleckhamer,* 50 R.I. 363, 366–67, 147 A. 886, 888 (1929). "The theory behind the rule is to protect innocent purchasers and to allow them to obtain and convey unsullied interests." *Sun Valley Land and Minerals, Inc. v. Burt,* 123 Idaho 862, 853 P.2d 607, 611 (Ct.App.1993).

It is significant to us that plaintiff does not attempt to quibble about defendants' status as innocent bona fide purchasers; instead, his complaint seeks to have the quitclaim deed declared void because when an instrument is wholly void, it "cannot be made the foundation of a good title, even under the equitable doctrine of bona fide purchase[r]." *Trout v. Taylor,* 220 Cal. 652, 32 P.2d 968, 970 (1934); *see also First Interstate Bank of Sheridan v. First Wyoming Bank, N.A., Sheridan,* 762 P.2d 379, 382 (Wyo.1988) ("While a *void* deed cannot pass title even in favor of an innocent purchaser or a bona fide encumbrancer for value, * * * a deed only *voidable* can pass title and be relied upon and enforced by a bona fide purchaser."). It is critical to our analysis, that for a deed to be declared void based upon fraud, the grantor must be free from negligence in signing the deed. *See* 23 Am.Jur.2d *Deeds* § 167 at 184–85 (2002) ("[I]f the grantor's signature to a deed is procured by fraudulently * * * misrepresenting its character, * * * and it cannot be said that the signing resulted from the grantor's inattention or negligence in signing something without knowing its contents, the instrument is void at law."); 26A C.J.S. *Deeds* § 150 at 186 (2001) ("[F]raud in the factum renders the deed not merely voidable but absolutely void. Where without negligence chargeable to the grantor there is no effective delivery because of fraud or other cause, the deed will be held void.").

Based on this Court's opinion in *Dante State Bank,* plaintiff argues that if he was not negligent when he signed the quitclaim deed, then defendants, despite their status as innocent bona fide purchasers, cannot prevail. The defendant in *Dante State*

---

**6.** Mortgagees, such as defendants, are also entitled to the protection afforded to a bona fide purchaser. *See* William B. Stoebuck & Dale A. Whitman, *The Law of Property,* § 11.10 at 880 (3d ed. 2000) ("it is universally agreed that a lender who takes a mortgage on land has given value despite the fact that the 'value' advanced is expected to be repaid").

*Bank,* who did not understand English, executed a power of attorney, written in English, in favor of her husband, who then endorsed to himself certain certificates of deposit that were in her name. *Dante State Bank,* 56 R.I. at 71–73, 183 A. at 875–76. In reliance on the power of attorney, the bank paid the certificates to the husband. *Id.* The defendant later admitted that she signed the power of attorney, but said that she did not understand what the document was, and that she would not have signed it if she had. *Id.* at 71, 183 A. at 875. A Superior Court jury found for the defendant on the grounds that she was unaware that she was executing a power of attorney in favor of her husband when she signed the document. *Id.* at 73, 183 A. at 876. On appeal, this Court noted that the critical issue in the case was not whether the power of attorney was binding on the defendant as between her and her husband, but whether it was binding on her with regard to the bank if the bank paid out money in reliance on it. *Id.* at 83, 183 A. at 880. The Court said that innocent third parties are entitled to enforce an instrument even when the party executing the instrument has been misled by the fraud of another into signing it, as long as there was negligence on the part of the signing party. *Id.*

"[E]ven when a party to a written instrument has been misled by the fraud of the other party into signing it in the belief that it is something materially different, and this belief is shown by clear and convincing evidence, this fact will not prevent a third party in interest, who is in the position of a bona fide purchaser for a valuable consideration, from enforcing the instrument, if the first party was not free from negligence in signing it, however it may be if his freedom from negligence is proved." *Id.*

The Court observed that the plaintiff relied on the power of attorney and that the defendant had not revoked it. *Id.* Therefore:

"Even if it was not binding on the defendant, as between her and her husband, because of fraud practiced upon her by him, it would be binding on her, as between her and the plaintiff, if the plaintiff did not, through any officer or other representative, acting within the scope of his employment, participate in such fraud or have notice of it or of a misunderstanding by her of the nature and effect of the power of attorney, but, on the contrary, acted in reliance on it in good faith and she was negligent in signing it as she did." *Id.* at 83–84, 183 A. at 880–81.

Relying on this case, plaintiff now seeks to stretch its holding and contends that whether or not he was negligent when he signed the quitclaim deed is a question for the jury, and that the hearing justice erred when he granted summary judgment in favor of defendants. We disagree.

■ This Court has said that "where the facts suggest only one reasonable inference, the trial justice may properly treat the question as a matter of law." *Kennedy v. Providence Hockey Club, Inc.,* 119 R.I. 70, 77, 376 A.2d 329, 333 (1977). The plaintiff, unlike the defendant in *Dante State Bank,* reads and writes English; he acknowledged that he had sufficient time to read the deed, and that he was not rushed into signing it, nor was he prevented from reading it. *See Carter v. Carter,* 223 Va. 505, 291 S.E.2d 218, 221 (1982) ("[f]ailure [of grantor] to read [deed] will not relieve him of obligations entered under it, and will not constitute fraud unless the grantee prevented the grantor's reading or induced the grantor

not to read it").[7] Further, the record reveals that plaintiff has owned several properties and has executed deeds in the past. It is clear to us that no reasonable person would have signed this document without reading it first, nor would a reasonable person have signed it in the event that it was blank, as plaintiff contended in his affidavit. "We note in this regard that it has long been a settled principle that 'a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents.'" *Manchester v. Pereira,* 926 A.2d 1005, 1012 (R.I.2007) (quoting *F.D. McKendall Lumber Co. v. Kalian,* 425 A.2d 515, 518 (R.I. 1981)); *see also Gorman v. Gorman,* 883 A.2d 732, 737 n. 7 (R.I.2005); *Fleet National Bank v. 175 Post Road, LLC,* 851 A.2d 267, 275 (R.I.2004); *Westerly Hospital v. Higgins,* 106 R.I. 155, 160, 256 A.2d 506, 509 (1969); *Murray v. Cunard S.S. Co.,* 235 N.Y. 162, 139 N.E. 226, 228 (1923) (Cardozo, J.) (stating that one "who omits to read takes the risk of the omission").

It is inescapable that the words "Quit–Claim Deed" were printed clearly on the top of the document and that it also contained a notary clause. These facts were sufficient to give the plaintiff notice of the document's significance. However, the only question the plaintiff asked of Cataldo was whether his signature required notarization. The plaintiff, based on his apparent trust in his son-in-law, failed to ask for any explanation of the quitclaim deed. Further, he either signed the deed without reading it first, or he signed a blank deed. We conclude that the plaintiff failed to establish a genuine issue of material fact and that he was negligent as a matter of law. Therefore, the defendants were entitled to judgment as a matter of law and the hearing justice appropriately granted summary judgment.

### Conclusion

For the foregoing reasons, we affirm the judgments of the Superior Court, and the record in this case shall be remanded to that tribunal.

---

7. During his deposition, when asked whether he could have read the document before he signed it, plaintiff testified: "I guess I could of, but I didn't see no reason." The plaintiff acknowledged that the print was very small and that he wears glasses, but he acknowledged that "I could have [read the document] if I wanted to."