Sandra ORESMAN and Richard Oresman, Plaintiffs,

v.

G. D. SEARLE & CO., Defendant.

Civ. A. No. 4255.

United States District Court, D. Rhode Island.

Jan. 16, 1975.

Leonard Decof, Max Wistow, Tobin, Decof, LeRoy & Silverstein, Providence, R. I., for plaintiffs.

Thomas D. Gidley, Hinckley, Allen, Salisbury & Parsons, Providence, R. I., for defendant; William P. Richmond, Sidley & Austin, Chicago, Ill., of counsel.

## OPINION

DAY, District Judge.

This is a civil action wherein the plaintiffs, citizens of Rhode Island, seek to recover damages allegedly sustained by them as a result of a severe stroke suffered by the plaintiff, Sandra Oresman, on February 25, 1968. Jurisdiction of this action is invoked under the provisions of 28 U.S.C. § 1332.

In their complaint the plaintiffs allege that the stroke suffered by said plaintiff, Sandra Oresman, resulted from her taking contraceptive pills manufactured by the defendant. In their amended complaint they allege the following grounds for the liability of the defendant to them for their claims asserted against it, viz:

Count I: breach of implied warranty that said pills were of merchantable quality for use as an oral contraceptive;

Count II: negligent manufacturing of said pills and negligent misrepresentation that the pills were safe to be taken;

Count III: negligence and *res ipsa loquitur*;

Count IV: strict liability in tort.

On January 6, 1971, this Court denied the defendant's motion for summary judgment in its favor as to Counts I, III and IV of said complaint, Oresman v. G.

D. Searle & Co., 321 F.Supp. 449 (D.R. I.1971). Following the completion of prolonged discovery by the parties and hearings and decisions on further pretrial motions by the parties, the trial of this action before a jury began on February 5, 1974. On March 22, 1974, after thirty (30) days of trial, the jury returned verdicts in favor of the plaintiffs. Its verdict in favor of the plaintiff Sandra Oresman was in the sum of $500,000, and its verdict in favor of Richard Oresman, her former husband, was in the sum of $15,000.

On March 27, 1974, the Clerk of this Court entered judgments reflecting these verdicts with the addition of the sum of $168,000 as interest to the verdict in favor of said Sandra Oresman and the addition of the sum of $5,040 as interest to the verdict rendered in favor of said Richard Oresman.

This matter is now before me upon the motions of the defendant to:

(1) Strike said pre-judgment interest from the amounts of said judgments.

(2) For judgment in its favor notwithstanding said verdicts.

(3) For a new trial, or

(4) In the alternative, to grant it a remittitur.

## MOTION TO STRIKE PRE–JUDGMENT INTEREST

As hereinbefore recited, said judgments entered by the Clerk of this Court included interest on the amounts of the verdicts rendered by the jury on March 22, 1974. The computation of said interest was based upon a rate of eight per cent (8%) per annum from January 9, 1970, the date of the filing of the plaintiffs' complaint until March 22, 1974, the date of the rendition of said verdicts, a period of four (4) years and seventy-two (72) days.

In its motion to strike said interest from said judgments, the defendant contends that the inclusion of pre-judgment interest in said judgments violates the

provisions of 28 U.S.C. § 1961 and the Constitution of the United States.

■■■■ 28 U.S.C. § 1961 deals only with post judgment interest. It has no reference to pre-judgment interest. Although the defendant concedes that the Rhode Island statute, General Laws, R. I. Sec. 9–21–10, provides for the award of pre-judgment interest, it contends that said statute has no application to the federal courts. In my opinion this contention is clearly without merit. It is well settled that in diversity cases, such as this, federal courts follow state law on the question of pre-judgment interest.

In Massachusetts Benefit Association v. Miles, 137 U.S. 689, 11 S.Ct. 234, 34 L.Ed. 834 (1891) the Supreme Court in construing the provisions R.S. § 966, now found in 28 U.S.C. § 1961, said 137 U.S. at page 691, 11 S.Ct. at page 235:

" . . . Section 966, while providing only for interest upon judgments, does not exclude the idea of the power in the several states to allow interest upon verdicts, and, where such allowance is expressly made by a state statute, we consider it a right given to a successful plaintiff, of which he ought not to be deprived by a removal of his case to the federal court. The courts of the state and the federal courts sitting within the state should be in harmony upon this point."

In its opinion the Supreme Court was careful to point out that this rule is applicable only to cases where the jurisdiction of the Federal court is based upon diversity of citizenship and the existence of a controversy in the requisite amount. Jurisdiction of this action is based upon diversity of citizenship of the parties and the existence of a controversy in excess of $10,000. 28 U.S.C. § 1332.

In Moore-McCormack Lines, Inc. v. Amirault, 202 F.2d 893 (1 Cir. 1953), the Court of Appeals held 202 F.2d at page 895:

" . . . But 28 U.S.C. § 1961 has no bearing on the problem whether pre-judgment interest is allowable as an item of damages on a particular claim, to be included in the total amount of the money judgment. As to that we must seek elsewhere for the applicable rule of law."

Similarly, in the case of Sylvania Electric Products, Inc. v. Barker, 228 F. 2d 842 (1 Cir. 1955) the Court of Appeals held 228 F.2d at page 851:

"On principle, interest on a verdict from the date of the writ is an item of substantive damages awarded "in order that the plaintiff may be more fully and justly compensated for the wrong complained of.' Moore-McCormack Lines, Inc., v. Amirault, 1 Cir., 1953, 202 F.2d 893, 895. And Massachusetts accepts this general principle, for in D'Amico v. Cariglia, 1953, 330 Mass. 246, 112 N.E.2d 807, the Supreme Judicial Court of Massachusetts in discussing the statute now under consideration and its predecessor said that 'Under both statutes interest was to be included as an item of damages.' Under Massachusetts conflicts rules, therefore, it follows that the plaintiff's right to interest on the verdict in the personal injury case figured from the date of the writ must be determined by the law of Nebraska.

We are not referred to any Nebraska authority supporting the plaintiff's position. In this situation the Nebraska rule is presumed to be the general common-law rule as it prevailed in Massachusetts prior to the statutory changes, see John B. Fray Co. v. S. Silk, Inc., 1923, 245 Mass. 534, 140 N. E. 259, and the Massachusetts rule prior to the statutory changes was that interest is not an element of the damages recoverable in actions of tort for personal injuries. . . . "

■■■■ Since the plaintiffs are citizens of Rhode Island and the alleged tort of the defendant was committed in Rhode Island, the right of the plaintiffs to interest on the verdicts in their favor must be determined by the law of Rhode Island.

At the time of the rendition of the verdicts in this action, Section 9–21–10 of the General Laws of Rhode Island provided as follows:

"In causes of action and actions for damages to the person or to real and personal estate in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of eight per cent (8%) per annum thereon from the date of commencement of the action which shall be included in the judgment entered therein."

Said provision was enacted by Public Law 1970, Chapter 184, Sec. 1. Said Public Law provided that it would become effective as of September 1, 1970. The instant action was commenced in January, 1970. At that time said Section 9–21–10 provided interest at the rate of six per cent (6%) per annum. The defendant also contends that said rate of six per cent (6%) should have been applied by the Clerk in determining the amount of said interest to be added to said verdicts. In my opinion this contention is without merit. Foster v. Quigley, 94 R.I. 217, 179 A.2d 494 (1962).

In Foster v. Quigley, supra, the plaintiff had commenced his action in May, 1951. A verdict was not entered in his favor until October, 1961. When said action was commenced, there was no statute in Rhode Island providing for the addition of prejudgment interest on verdicts. While said action was pending trial, the legislature enacted the predecessor of the present section 9–21–10 of the General Laws which provided for pre-judgment interest at the rate of six per cent (6%) per annum. By its terms said statute was to be effective on September 1, 1958, more than seven (7) years after the plaintiff commenced his action.

In holding that the plaintiff was entitled to pre-judgment interest on said verdict from the date of the commencement of his action the Supreme Court of Rhode Island held in its opinion, 94 R.I. at pages 218–219, 179 A.2d at pages 495–496 as follows:

"Interest on a judgment in an action of trespass or trespass on the case for damages to person or property is not of the substance of the right of action but exclusively an incident attached thereto by legislative fiat after such right has been adjudicated. The period for computation of such interest is in the same category. It is in essence analogous to costs concerning which it is said that 'a statute establishing costs and fixing court fees applies to pending cases equally with those arising after its enactment, unless a contrary purpose is expressed or fairly inferable from the words used.' 20 C.J.S. Costs § 3 p. 264 . . .

Here of course it is not a question of whether the legislature could make the provision for interest computable from the date of a writ commencing an action before the enactment of the statute but whether it intended to have its fiat thus applied. Its language readily responds to the time of decision or verdict. For this reason we construe the statute as intending to become operative in any case where a decision is made or verdict rendered after its enactment irrespective of the time when the action was commenced. Hence, the trial justice erred in refusing to order the addition to the judgment of interest from the date of the writ." To the same effect, see Kastal v. Hickory House, Inc. 95 R.I. 366 (1963), 187 A.2d 262.

■ Since said verdicts in favor of the plaintiffs were rendered after said amendment to said Section 9–21–10, which became effective on September 1, 1970, the defendant's motion to reduce the amount added as interest to said verdicts is without merit and must be, and is, denied.

## 1180

### DEFENDANT'S MOTION FOR JUDG-MENT N. O. V.

The defendant's motion for judgment in its favor notwithstanding the verdicts in this case has previously been submitted to this Court in other forms. The defendant in support thereof is reasserting the arguments it advanced in support of its motion for directed verdicts in its favor. As was indicated by this Court's ruling on said motion, it is this Court's considered opinion that there was sufficient evidence on the issue of the defendant's negligence with particular reference to the warnings it issued to physicians concerning its birth control pills to justify the submission of that issue to the jury, and the jury's apparent conclusion with respect to said issue. The adequacy of said warnings was an issue for determination by said jury.

Defendant in its memorandum does not contend that it is entitled to a judgment notwithstanding the verdict on the counts charging breach of warranty. Clearly the plaintiffs were entitled to have this issue determined by the jury.

It is well settled that in determining the merits of a motion for entry of judgment notwithstanding the verdict it is the duty of the Court to apply the same standards that apply to a motion for a directed verdict. Borel v. Fibreboard Paper Products Corporation, 493 F.2d 1076 (5th Cir. 1973); Juhnke v. EIG Corporation, 444 F.2d 1323 (9th Cir. 1971); Schneider v. Chrysler Motors Corporation, 401 F.2d 549 (8th Cir. 1968); Decato v. Travelers Insurance Company, 379 F.2d 796 (1st Cir. 1967); Farmers State Bank of Valparaiso v. Dravo Corporation, 321 F.2d 38 (7th Cir. 1963). The same rule is applied in the courts of Rhode Island. Russo v. Odell, 105 R.I. 349, 252 A.2d 135 (1969).

Similarly, it is well settled that it is proper to direct a verdict in a case where the evidence is such that without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there is only one verdict which reasonable jurors could find. Fleming v. McEnany, 491 F.2d 1353 (2nd Cir. 1974). The question of whether the evidence is sufficient to create an issue of fact for the determination of the jury is solely a question of law to be determined by the trial court. United States ex. rel. Weyerhouser Co. v. Bucon Construction Company, 430 F.2d 420 (5th Cir. 1970); Roche v. New Hampshire Nat'l Bank, 192 F.2d 203 (1st Cir. 1951). The standard to be applied by the trial court is whether there is evidence upon which the jury could properly find a verdict for the party against whom the motion is directed. Ralston Purina Company v. Edmunds, 241 F.2d 164 (4th Cir. 1957), cert. denied, 353 U.S. 974, 77 S.Ct. 1059, 1 L. Ed.2d 1136 (1957). In ruling upon such a motion the Court must view the evidence and any inferences which may be reasonably drawn from it in the light most favorable to the party opposing the motion for a directed verdict. Riske v. Truck Insurance Exchange, 490 F.2d 1079 (8th Cir. 1974); Bayamon Thom McAn, Inc. v. Miranda, 409 F.2d 968 (1st Cir. 1969); D'Andrea v. Sears, Roebuck and Co., 109 R.I. 479, 287 A.2d 629 (1972). If the evidence is of such quality and weight that reasonable persons might reach different conclusions in the exercise of impartial judgment, a motion for a directed verdict must be denied.

In support of its motion for judgment in its favor notwithstanding said verdicts, the defendant is reasserting the same arguments made by it in support of its motion for directed verdicts at the conclusion of the evidence. As was indicated at that time, it was this Court's considered opinion that there was sufficient evidence on the issues of defendant's negligence, and its breach of warranty and the cause of Sandra Oresman's injuries to require submission of this case to the jury. Similarly, there was sufficient evidence for the submission to the jury for its determination the issue of whether defendant's pills were in a defective condi-

tion, unreasonably dangerous to the user or consumer thereof under the rule set forth in Restatement, Torts (2nd) § 402A. As predicted by this Court in its opinion in Oresman v. G. D. Searle & Co., 321 F.Supp. 449 (D.C.R.I.1971), the Supreme Court of Rhode Island in Ritter v. The Narragansett Electric Company, 109 R.I. 176, 283 A.2d 255 (1971), adopted the doctrine of strict liability in tort set forth in said Restatement, Torts (2nd) § 402A as a part of the law of Rhode Island.

This Court is still of the opinion that there was sufficient evidence on the issues of the defendant's negligence with respect to the warnings it issued concerning its birth control pills, its alleged breach of warranty with respect thereto and alleged defects in said pills to require the submission of those issues to the jury for its determination and its conclusion with respect thereto. Without determining the credibility of the witnesses and the weight of the evidence, it cannot be said that there could be only one reasonable conclusion based upon all the evidence and the reasonable inferences to be drawn therefrom. See generally, 5A Moore's Federal Practice ¶ 50.07(2).

Accordingly, the defendant's motion for judgment in its favor notwithstanding said verdicts must be, and it is, denied.

### DEFENDANT'S MOTION FOR A NEW TRIAL

The defendant has, in the alternative, moved for a new trial. As grounds for such relief, the defendant asserts the following:

"1. The verdict is contrary to law.

2. The verdict is contrary to the weight of the evidence.

3. The verdict as to general damages is grossly excessive and unreasonable under the evidence.

4. The verdict was obviously the result of passion, bias and prejudice on the part of the jury.

5. The verdict in the sum of $500,000 for Plaintiff Sandra Oresman and $15,000 for Plaintiff Richard Oresman is punitive in character and contrary to the Court's rulings.

6. This Honorable Court erred during the course of the trial in the following respects . . ."

The defendant then enumerates fifty-six (56) occasions where it claims this Court erred in certain rulings made during the lengthy trial of this case.

Rule 59(a) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

"A new trial may be granted to all or any of the parties and on all or part of the issues

(1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . ."

With respect to the first ground of its motion the defendant concedes, as it must, that said ground is the same ground that it urged in support of its motion for a judgment notwithstanding the verdict. As this Court has hereinbefore stated, that contention is without merit and requires no further discussion.

As to the second ground of said motion, the defendant assumes that the warnings that it gave to users of its pills were adequate and that said pills were free of defects. The adequacy of said warnings and the quality of said pills were issues of fact to be determined by the jury. In support of this ground of its motion, the defendant categorizes the testimony of its experts as "overwhelming" and that of plaintiffs' experts as "meagre". The testimony presented by the parties could not have been more diametrically opposed. The testimony of Doctors Sweet, Strom and Lewis, who testified in support of the plaintiffs' claims, was clearly competent. They testified unequivocally that defendant's birth control pills do cause blood clotting and did cause the stroke suffered in 1968 by the plaintiff, Sandra

Oresman. It was for the jury to determine the credibility and weight to be given to their testimony notwithstanding the contrary opinions expressed by medical experts who testified in behalf of the defendant.

 As a third ground of its motion for a new trial the defendant contends that said verdict in favor of Sandra Oresman was "grossly excessive and unreasonable under the evidence". In the alternative, the defendant seeks a remittitur. It is well settled that whether a new trial shall be granted on the ground that the verdict of a jury is excessive in its amount is a matter resting within the sound discretion of the trial Court. The practice of granting a remittitur is well settled in the federal courts. Union Pacific R. Co. v. Hadley, Admr., 246 U.S. 330, 38 S.Ct. 318, 62 L. Ed. 751 (1918); 6 Moore's Federal Practice, ¶ 59.05 [3] and 59.08 [6]. The decision to apply the device of remittitur is a matter within the discretion of the trial court and the standard usually utilized in determining whether a remittitur should be granted is whether the verdict is in excess of what a jury could reasonably award in the light of the evidence presented to it.

In the instant case the jury, after considering the voluminous evidence presented to it during said trial, could properly find that the plaintiff, Sandra Oresman, sustained permanent brain damage in 1968 as a result of her prior use of the contraceptive pills made by the defendant. Doctor Strom, her physician, testified that she suffered a stroke as a result of her ingestion of said pills resulting in permanent damage to her brain. He further testified that as a result of said brain damage there is the likelihood of further seizures, and that she is compelled to take Dilantin, an anti-convulsant, for the rest of her life. The evidence is undisputed that she suffered subsequent episodes which Doctor Strom diagnosed as seizures resulting from the brain damage originally caused by said oral contraceptives despite the fact that she was taking Dilantin three times daily as prescribed by him. Doctor Strom testified, in effect, that her condition as it existed at the time of this trial will remain unchanged; that it has stabilized.

The undisputed evidence presented to the jury established that the plaintiff, Sandra Oresman, who was thirty-four (34) years of age at the time of this trial in early 1974, had changed from an active, attractive young woman to one whose face had noticeably deteriorated and to a person who is anxious, tense, easily confused and constantly fearful of new attacks that may result in her paralysis. She walks with a slight limp. In 1968, when she suffered said stroke, she became totally paralyzed on her right side. She testified that after her stroke in 1968 she saw herself in the mirror and that "One side of me was like it always was—the other side—my face was drooping down and my shoulder and everything was just down." She also testified that prior to said stroke in 1968 she had been employed as a model for the display of women's dresses and apparel. Photographs of her face taken at that time were introduced as exhibits during the trial. The jury could justifiably have found a marked deterioration in her appearance at the time of this trial.

The evidence further showed that Mrs. Oresman was hospitalized for a period of five (5) weeks following said stroke and that after her discharge from the hospital she was confined to a wheel chair and wearing a leg brace. For almost two (2) years she remained in a highly debilitated condition, fearful of further attacks, and unable to control her mental faculties to the extent of even watching television. She suffered another stroke in 1970. She then became convinced that such an episode could happen to her at any time, according to her testimony.

As a result of said brain damage suffered by her, the evidence established that Mrs. Oresman will be unfit to be employed as a teacher for which she was educated; she tires easily and has little resistance to stress. In moments of stress she testified that her arm cramps,

"her head gets foggy and gets blank" and that she trembles for virtually no reason.

Physicians testifying in behalf of the defendant conceded that her condition is progressive but contended that it was caused by multiple scelerosis and was not the result of a stroke caused by her ingestion of the pills made and sold by the defendant. That was clearly an issue to be determined by the jury. In view of the testimony presented during the trial, the jury was clearly warranted in finding that the condition of the plaintiff is progressive and that it resulted from her ingestion of said pills manufactured and sold by the defendant.

In my considered judgment, after a careful review of the evidence relating to the injuries sustained by the plaintiff, Sandra Oresman, it cannot be said that the verdict in her favor was shockingly excessive. In the absence of such a showing by the defendant, this ground of its motion for a new trial is without merit and affords no basis for the grant of a new trial to the defendant. Stafford v. Perini Corporation, 475 F.2d 507 (1st Cir. 1973); Boston & Main Railroad v. Talbert, 360 F.2d 286 (1st Cir. 1966); New York, N. H. & H. R. Co. v. Zermani, 200 F.2d 240 (1st Cir. 1952), cert. denied, 345 U.S. 917, 73 S.Ct. 729, 97 L.Ed. 1351 (1953).

As a fourth ground of its motion for a new trial the defendant states that "the verdict was obviously the result of passion, bias and prejudice on the part of the jury". Defendant concedes that this contention is based solely on the size of the verdict rendered by the jury. No other basis has been recited to establish the presence of any passion, bias or prejudice on the part of the jury. In my considered opinion this ground of the defendant's motion for a new trial is clearly without merit and requires no additional discussion.

The fifth ground urged by the defendant in support of its motion for a new trial is that said verdict in the sum of $500,000 in favor of Sandra Oresman and said verdict in the sum of $15,000 in favor of Richard Oresman are punitive in character and contrary to the Court's rulings. This ground is based solely on the amounts of said verdicts, and in my opinion is clearly without merit.

Finally, in support of its motion for a new trial, the defendant contends that this Court erred on approximately fifty-six (56) occasions in its rulings during the protracted trial of this case. In this Court's opinion, it would unduly extend this opinion to discuss each of these contentions. This Court considered its rulings were correct when they were made and is still of that opinion.

After a careful review of all of the grounds asserted by the defendant in support of its motion for a new trial, this Court concludes that the defendant is not entitled to a new trial. Accordingly, said motion for a new trial is denied.

## DEFENDANT'S MOTION FOR A REMITTITUR

In support of this motion the defendant merely relies upon the same contentions it made in support of its motion for a new trial, i. e., that the verdict of the jury in favor of said Sandra Oresman, in the sum of $500,000, was the product of passion and prejudice by the jury and is shockingly excessive. It relies solely on this assertion and made no attempt to show to what extent said verdict is excessive. In view of the severe, permanent and progressive injuries which said Sandra Oresman sustained, as hereinbefore described, it is the considered judgment of this Court that said verdict in her favor, in the sum of $500,000, was not excessive or unsupported by the evidence submitted to the jury. Accordingly, the Court finds that the defendant's motion for a remittitur of some portion of the jury's verdict in favor of the said Sandra Oresman must be, and it is, denied.

On the other hand, this Court is of the opinion that said verdict in the sum of $15,000 in favor of the said

**1184**

Richard Oresman is clearly excessive. The evidence clearly establishes that he incurred medical bills amounting to $10,091.30 for his wife's treatment prior to their divorce. Subsequent medical bills were incurred by Sandra Oresman after said divorce but such charges did not become his obligations. He is entitled to recover only said sum of $10,091.30, with interest thereon at the statutory rate of eight per cent (8%) from the date of the filing of this action to the date of the rendition of said verdict.

Accordingly, the defendant's motion for a remittitur of that portion of said verdict in favor of Richard Oresman which is in excess of said sum of $10,091.30 is granted. Unless the plaintiff, Richard Oresman, files such a remittitur within twenty (20) days after the filing of this opinion, the defendant will be entitled to a new trial of said claim of Richard Oresman for said medical expenses incurred by him.

Counsel for the plaintiffs will prepare and present for entry an order in conformity with the findings and conclusions hereinbefore set forth.