**Gordon ANDERSON and Dorothy Anderson, Plaintiffs,**

v.

**ICELAND STEAMSHIP COMPANY, Defendant.**

Civ. A. No. 75–1678–J.

United States District Court, D. Massachusetts.

May 17, 1977.

David B. Kaplan, Kaplan, Latti & Flannery, Boston, Mass., for plaintiffs.

Richard A. Dempsey, Glynn & Dempsey, Leo F. Glynn, Boston, Mass., for defendant.

## COURT'S RULINGS ON DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND DEFENDANT'S MOTION FOR A NEW TRIAL

JULIAN, Senior District Judge.

After a five-day trial the jury returned a verdict for the plaintiff longshoreman, Gordon Anderson, on his negligence claim against the shipowner under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 905(b)). On the claim of the longshoreman's wife, Dorothy Anderson, for loss of consortium, the jury returned a verdict for the defendant shipowner. The jury returned a special verdict finding that the plaintiff Gordon Anderson was contributorily negligent to the extent of 50 per cent. Total damages were found to be $130,000. Thus, judgment was entered for the plaintiff Gordon Anderson in the amount of $65,000, plus interest. The defendant shipowner timely moved for a judgment notwithstanding the verdict under Rule 50(b) of the Federal Rules of Civil Procedure, having made a motion for a directed verdict at the close of all the evidence which was not granted. It also moved for a new trial under Rule 59 of the Federal Rules of Civil Procedure. The plaintiff Gordon Anderson interposed timely oppositions to both motions. After a consolidated hearing on these two motions, the Court took them both under advisement.

Each motion will be treated separately. In determining the merits of a motion for judgment notwithstanding the verdict, it is the duty of the Court to apply the same criteria that are applicable to the determination of a motion for a directed verdict. *Oresman v. G. D. Searle & Co.*, 388 F.Supp. 1175, 1180 (D.C.R.I.1975); 9 Wright & Miller, *Federal Practice and Procedure*: Civil § 2537, p. 599 (1970). The Court must view the evidence and all inferences which

may be reasonably drawn from it in the light most favorable to the party opposing the motion for judgment notwithstanding the verdict. *Bayamon Thom McAn, Inc. v. Miranda*, 409 F.2d 968, 973 (1 Cir. 1969).

The Court rules that on the basis of the evidence introduced at the trial, the jury could reasonably have found as follows. Gordon Anderson was employed as a checker[1] by Elliott Stevedoring Company, an independent stevedoring contractor hired by the defendant, Iceland Steamship Company, to discharge a cargo of frozen fish from its vessel, the GODAFOSS, berthed in Gloucester, Massachusetts. Discharging operations began on November 6, 1974, and continued through the next day. Some of the cartons of frozen fish which made up the cargo were wet, torn, soggy and in defective condition. This damage had been caused by a storm while the ship was travelling along the coast of Iceland. No employee of Elliott Stevedoring Company caused the damage to the cartons. The crew of the GODAFOSS had remastered[2] some of the defective cartons during a stopover at Isafjordur, Iceland. They did not remaster all damaged cartons because there was an insufficient supply of master containers. The crew could have obtained additional master containers at several other stopover points in Iceland, but neglected to do so.

In the course of the unloading at Gloucester, "gurry," a substance described by some witnesses as "fish juice or parts," spilled out of the defective cartons onto the pier. Thereafter, the gurry was spread over the surface of the pier, as stevedores, employed by Elliott Stevedoring Company, continued to walk on the pier and to drive forklift trucks on it. The presence of the gurry on the pier created a slippery and dangerous condition for the longshoremen who had to work there. The longshoremen, including the plaintiff, noted the defective condition of the cartons on November 6, and some of the longshoreman, including the plaintiff, informed the mate several times during the day about the defective cartons. Each time, the mate, who was an employee of the defendant shipowner, stated that he would have members of his crew remaster the defective cartons. The longshoremen, including the plaintiff, continued to work, but the cartons were never remastered. The slippery conditions on the dock remained. The pier was not cleaned up during the two days of unloading operations. Pursuant to the applicable regulations of the Occupational Safety and Health Administration, 29 C.F.R. § 1918.91(c), Elliott Stevedoring Company had the primary obligation to eliminate slippery conditions on the dock. At about 2 p. m. on November 7, 1974, the second day of unloading, the plaintiff, while attempting to lift a 50-lb. carton of frozen fish, slipped in the gurry on the pier, twisted his back, and sustained the injuries for which he claimed damages in this suit.

In support of its motion for judgment notwithstanding the verdict, the defendant urges that the duty owed by a shipowner to a longshoreman under the negligence remedy created by 33 U.S.C. § 905(b) is analogous to the duty owed by a landowner to a business invitee. The standard of care for landowners is described in the Restatement (Second) of Torts § 343 and § 343A. The defendant contends that under this standard it is not liable to the plaintiff, Gordon Anderson, as a matter of law.

The rules in the Restatement on which the defendant relies relate to possessors of land. The defendant shipowner in this

---

1. There was evidence adduced at trial that a checker is a stevedore whose duty it is to check and tally the freight which is being discharged from a vessel. His primary workplace is on the pier.

2. There was evidence adduced at trial that "remastering cartons" means placing damaged or defective cartons into a larger container referred to as a "master container" or "master carton." A master container is "a primary shipping container into which is packed a number of cases each carrying units of the packaged goods." Webster's Third New International Dictionary, Unabridged (1964). Cartons are remastered in the hold of a ship before the cartons are loaded onto pallets and hoisted out of the ship and onto the dock.

case, however, did not own, possess or control the land (the pier) on which the accident occurred. The defendant shipowner owned, possessed and controlled the ship. The accident, however, did not happen on the ship.[3]

The cargo that was being unloaded was in defective condition through the negligence of the defendant shipowner. The defective condition of the cargo in turn was a proximate cause of the slippery condition on the floor of the pier which was a direct cause of the injury to the plaintiff. Thus the jury was warranted in finding that the defendant shipowner's negligence was a proximate cause of the plaintiff's injury.

Even though the plaintiff's and Elliott Stevedoring Company's failure to clean up the slippery condition on the dock was a contributing cause of the plaintiff's accident, their negligence did not absolve the defendant shipowner from also being one of the contributing causes of the slippery condition. The legislative history of the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act is unequivocal in preserving the rule of comparative negligence.[4] In its instructions to the jury this Court explicitly reminded the

jury[5] that the applicable regulations of the Occupational Safety and Health Administration, 29 C.F.R. § 1918.91(c), place the duty on the stevedoring company to eliminate slippery conditions as they occur. In light of the evidence before it, the jury could reasonably have found that the plaintiff's injury was caused by the contributing negligence of the shipowner, the stevedoring company, and the plaintiff himself. Accordingly, the jury correctly applied the rule of comparative negligence.

In *Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), the Supreme Court upheld the liability of a shipowner on both a negligence count and an unseaworthiness count on facts essentially similar to those in the case at bar. The part of the *Gutierrez* opinion which deals with the shipowner's negligence survives the 1972 Amendments to the Act which specifically preserve the negligence remedy to longshoremen against shipowners. (33 U.S.C. § 905(b)) That part of *Gutierrez* controls the disposition of this case.[6] In *Gutierrez* a shipowner allowed a cargo of beans which was packed in defective bags to be discharged from the vessel. During unloading, the beans spilled out of

---

3. The cases in which Circuit courts have adopted the Restatement (Second) of Torts § 343 and/or § 343A as appropriate analogues for § 905(b) actions have uniformly involved accidents to longshoremen which occurred aboard the vessel. See *Gay v. Ocean Transport and Trading, Ltd.*, 546 F.2d 1233 (5 Cir. 1977); *Anuszewski v. Dynamic Mariners Corp.*, 540 F.2d 757 (4 Cir. 1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977); *Napoli v. [Transpacific Carriers, Etc.] Hellenic Lines*, 536 F.2d 505 (2 Cir. 1976); *Munoz v. Flota Merchante Grancolombiana, S. A.*, 553 F.2d 837 (2 Cir. 1977).

4. ". . . [T]he Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury. Also, the Committee intends that the admiralty rule which precludes the defense of 'assumption of risk' in an action by an injured employee shall also be applicable." 3 U.S.Code Cong. & Admin.News, p. 4705 (1972).

5. ". . . . I remind you of the regulation that was read to you in the course of the evidence in the course of the trial, namely, the regulation which requires the stevedoring company to observe this rule: "slippery conditions shall be eliminated as they occur." It's simply stated as that. There was evidence in this case, you may recall, given by Elliott, the supervisor of the stevedoring company, that he had instructed all the employees of Elliott Stevedoring Company to eliminate slippery conditions on the dock. If you find that to be true, and if you find that that instruction was communicated to the plaintiff as well as other employees of the stevedoring company, and you further find that the plaintiff failed to follow that instruction, then you would be warranted in considering that fact as evidence of the plaintiff's own negligence."

6. This Court's reliance on *Gutierrez, supra*, is not altered by the Supreme Court's decision in *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383, *rehearing denied*, 404 U.S. 1064, 92 S.Ct. 731, 30 L.Ed.2d 753 (1971), because the *Victory Carriers* decision merely delineated the extent of federal maritime juris-

the bags and onto the surface of the pier, creating a dangerous condition for the long-shoremen who were working there. The petitioner, a longshoreman, slipped on the beans and injured himself. The Supreme Court stated:

"The shipowner knew or should have known that injury was likely to result to persons who would have to work around the beans spilled from the defective bags, and it was negligent in allowing cargo so poorly stowed or laden to be unloaded. Petitioner fell on the beans and injured himself, and such injuries were proximately caused by the respondent's negligence."

*Supra*, at 207, 83 S.Ct. at 1187.

"The force of these fact findings is not lessened by the contention that respondent did not control the pier or have 'even a right to control that locus,' 301 F.2d, at 416 . . . [C]ontrol of the impact zone is not essential for negligence."

*Supra*, at 211, 83 S.Ct. at 1189.

Thus a shipowner has a duty to refrain from discharging cargo contained in cartons where it knows or should know that the cartons are torn or are likely to tear and the contents (in this case fish) spilled on the pier, and that injury is likely to result to the longshoremen who have to work on the pier. The jury was warranted in concluding that Iceland Steamship Company breached that duty of care to the plaintiff longshoreman.

Defendant advances many of the same contentions in support of its motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure as for its motion for judgment notwithstanding the verdict.

On the evidence before it and on the instructions given to the jury by the Court, the jury could reasonably have found for the plaintiff. The Court has re-examined its instructions and is of the opinion that they are legally correct.

The defendant's motions for judgment notwithstanding the verdict and for a new trial are both denied.

diction under 28 U.S.C. § 1333. The plaintiff longshoreman's claim is squarely within the coverage of the 1972 Amendments to the Long-shoremen's and Harbor Workers' Compensation Act (33 U.S.C. §§ 902(3), 903(a)). This Court need not postpone a determination of the two motions before it pending decision of the United States Supreme Court in *Northeast Marine Terminal Co., Inc. v. Caputo*, —— U.S. ——,

97 S.Ct. 1641, 52 L.Ed.2d 354; *International Terminal Operating Co. v. Blundo*, —— U.S. ——, 97 S.Ct. 1641, 52 L.Ed.2d 354; cert. granted, 429 U.S. 998, 97 S.Ct. 522, 50 L.Ed.2d 607 (1976), because the facts in those cases are so materially different as to have no bearing on the issues in the case presently before this Court.