287 A.2d 629.

GEORGE J. D'ANDREA *vs.* SEARS, ROEBUCK AND CO.

GEORGE J. D'ANDREA, JR., *p.p.a. vs.* SEARS, ROEBUCK AND CO.

FEBRUARY 21, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. These civil actions against Sears, Roebuck and Co. were brought in the Superior Court by George J. D'Andrea, Jr., a minor who sued by his father and next friend, George J. D'Andrea, to recover for injuries sustained as a result of the defendant's alleged negligence, and by the father who sued in his own name for consequential damages. At the close of all of the evidence, the trial justice reserved decision on the defendant's motions for directed verdicts and

the cases were allowed to go to the jury which returned a verdict of $175,000 for the son and of $6,564.35 for the father. Following rendition of verdicts, the trial justice denied the defendant's motions for direction. Thereafter, the defendant's motion for a new trial in each case was denied, and the father was granted a new trial in the case brought by him on the issue of damages only, unless defendant consented to an additur of $4,914.[1] The defendant refused to consent and has appealed both cases. Except where otherwise indicated we refer only to the son's case, but what we say with respect thereto applies equally, wherever appropriate, to the father's case.

The plaintiff was 18 years of age when on August 3, 1966 he sustained the serious injuries resulting in these actions. He had graduated from high school in June, and while waiting to matriculate at college in the fall, had obtained summer employment as a laborer with Manpower, Inc., which concern was engaged in the business of assigning employees to various businesses. About two weeks prior to the accident Manpower had assigned plaintiff to work at defendant's warehouse in Cranston. His work there was performed principally on a long loading platform and included the operation of a forklift truck.

The loading platform, which was approximately four feet above ground level, ran along the front of defendant's ware-

---

[1] Following argument, our examination of the papers transmitted disclosed that neither the judgment nor the jacket included any reference to the additur ordered by the trial justice in the father's case, and that in neither case did the record or the papers reveal how the trial justice decided the defendants' motions for directed verdicts on which he had reserved decision. Accordingly, and on our own motion, we remanded the record and the papers to the Superior Court to afford it the opportunity upon due notice to the parties to remedy the deficiencies. Subsequent to our remand, the papers and the record were again certified and transmitted here and they now show that in each case defendant's motion for a directed verdict was denied and that the defendant refused to consent to the additur ordered in the father's case.

house. Access between it and the warehouse was through three bay doors. In front of the center door was a loading dock consisting of a steel plate which was approximately six feet by six feet in size. It formed a part of the floor surface of the loading platform, was hinged to it at the end nearer the warehouse doors, extended at its opposite end about six inches beyond the edge of the platform, and, when not in use, rested on adjustable stops which were designed to keep it level with the remainder of the platform floor. When in proper working condition, a spring mechanism under the plate would cause the end closer to the edge of the platform to elevate whenever a delivery truck backed into its projecting arms, and then, after the truck reached the platform and came to a stop, the end which had earlier raised itself automatically lowered to the floor of the truck thereby providing a ramp whereby hand trucks could be used to facilitate the loading and unloading of merchandise from delivery trucks.

The accident occurred at about 12:30 on the afternoon of August 3. There were no eyewitnesses to all that occurred, and plaintiff, who suffers from retrograde amnesia, or loss of memory as to the day's events, was unable to relate what happened. What little evidence there is about what took place came from William R. Gosselin, a coworker. He and plaintiff had been unloading a delivery truck that morning during which plaintiff had operated the forklift truck. Following lunch, Gosselin was standing just inside one of the warehouse doors checking invoices when he heard the forklift truck's motor start. Next, he heard a "clang." He looked up and saw plaintiff driving the forklift truck parallel to, and about one foot from, the edge of the platform. He then saw the metal plate drop below the level of the platform; plaintiff fall out of the forklift to the ground; the forklift itself topple off the platform onto the ground and partially on top of plaintiff; and the plate then

return to its normal position. Gosselin, with the help of others in the vicinity, raised the forklift and removed plaintiff from under it. The plaintiff was then taken to a hospital where he was treated for massive injuries including cerebral contusions, a fractured skull, and a fractured clavicle. He still suffers from residual brain damage.

Initially, defendant argues that the trial justice's refusal to direct a verdict in its behalf was error. Its position is that there was neither testimony that the loading dock was not in good repair nor evidence that the steel plate had ever dropped more than two and one-half inches below the level of the platform or that such a drop, either alone or in connection with any other events, could have caused the forklift to tip over and fall from the platform to the ground.

To allow a jury to find both negligence and causation upon so limited and sparse a showing, defendant argues, is to invite conjecture and speculation. Such findings, it says, could be reached only by pyramiding atop the initial inference that the loading dock was defective, the further inference that the forklift truck tipped and toppled from the platform because of that defect.

The flaw in defendant's position is its dependence on an incomplete recital of evidence which omits much that is essential and material in the case. Thus, for example, it overlooks the fact that defendant's employee who was in charge of the warehouse was not called as a witness and that the failure to call him was not explained. It overlooks, also, the co-worker Gosselin's testimony that the steel plate dropped one or two inches below the floor level when he, although weighing only 160 pounds, walked on that portion nearer the edge of the platform and that he had reported this to his superior; that the steel plate dropped when plaintiff drove the forklift truck over it, and then raised itself to floor-level position immediately after the forklift toppled from the loading platform; that on the day of the accident

the loading dock was operated manually rather than automatically as would have been the case had it been in good operating condition; and that the adjustable stops, if properly in line, would have prevented the steel plate from dropping below floor level.

In passing upon defendant's motion for a directed verdict, the trial justice was not limited in his consideration to the facts stressed by defendant in his argument to us. Instead, he was required to look at all of the material evidence, and to view it, as well as the inferences which could reasonably and properly be drawn therefrom, in the light most favorable to plaintiff. It apparently satisfied him, as it does us, that there were contraverted factual issues, which, if resolved in favor of plaintiff, would entitle him to a verdict. That being so, our settled rule required that those issues be submitted to a jury for its determination. *Walsh* v. *DiNitto,* 107 R. I. 356, 267 A.2d 714 (1970); *Maggi* v. *De Fusco,* 107 R. I. 278, 267 A.2d 424 (1970); *Russo* v. *Odell,* 105 R. I. 349, 252 A.2d 135 (1969); *Dawson* v. *Rhode Island Auditorium, Inc.,* 104 R. I. 116, 121-22, 242 A.2d 407, 411 (1968).

Defendant further contends that the trial justice should have granted its motion for a new trial. In assigning his refusal to do so as error, defendant does not suggest that the trial justice did not fully meet what in *Barbato* v. *Epstein,* 97 R. I. 191, 196 A.2d 836 (1964) we said were his obligations, *viz.,* to consider all of the material evidence in the case in the light of the charge to the jury, to pass on its weight and the credibility of the witnesses, and then, after the completion of that evidence-sifting process, to decide whether to approve the verdict or to set it aside. Instead, it contends that in weighing that evidence he misconceived some that was material and that his decision by reason thereof should not be afforded the great weight it otherwise would be entitled to receive.

What defendant refers to as a misconception is found in

the trial justice's reference to the testimony of Professor Hatch, an expert who testified for defendant. The defendant says that the trial justice erroneously attributed to the professor the statement that there was a "worn area" in the notch which was located in the lower arm of the loading dock. That the trial justice by that reference may have misconceived material evidence — and we have serious misgivings that he did — does not *ipso facto* entitle defendant to a new trial. Instead, it calls for us to apply the appellate rule which says a new trial is in order only if our own independent examination of the record fails to disclose any competent evidence which, if believed, would support the jury's verdict. *Landes* v. *Faella,* 106 R. I. 23, 255 A.2d 724 (1969). We made that kind of an examination of the evidence in the case when we considered defendant's contention that it was entitled to have a verdict directed in its favor. Our conclusion then was that there was competent evidence in the record which, if believed by the jury, would justify a plaintiff's verdict. On reexamination we cannot say that the record is so devoid of competent evidence in support of the verdict as to justify our ordering a new trial.

The defendant also argues that the trial justice should have granted its request to instruct the jury on the issue of assumed risk.[2] It is, of course, axiomatic that an instruction must be applicable to the facts adduced in evidence, and that a requested instruction should be refused unless premised upon those facts. *Handy* v. *Geary,* 105 R. I. 419, 432, 252 A.2d 435, 442 (1969); *Cinq-Mars* v. *Standard Cab Co.,* 103 R. I. 103, 109, 235 A.2d 81, 84 (1967); *Morrarty* v. *Reali,* 100 R. I. 689, 695, 219 A.2d 404, 407 (1966).

---

[2]The instruction requested was:

"If you find that George D'Andrea, Jr. *either knew or should have known* that the loading platform depressed when weight was placed upon it prior to the accident, then George D'Andrea, Jr. may be said to have assumed the risk of accident and your verdict as a matter of law must be in favor of defendant, Sears, Roebuck and Co." (emphasis supplied)

In this case the evidence defendant relies upon to furnish a context for the requested instruction is found in Gosselin's testimony that "a good part" of his own working time, as well as plaintiff's, "was spent on the platform," and that the steel plate would drop an inch or an inch and one half when he walked on the portion closer to the edge of the platform. With that as a foundation, Gosselin was then asked by defendant, "Did you ever see it happen when other people walked over [it]?" When he replied "Yes," the next question posed was "George D'Andrea?" and the response was "Yes."

The foregoing evidence, defendant contends, was reasonably susceptible to the inference that plaintiff, having walked over the plate, either knew or was chargeable with constructive notice of how it operated, and that with those matters as an evidentiary background, the trial justice should have instructed the jury that it should find that plaintiff had assumed the risk if he *"either knew or should have known* that the loading platform depressed when weight was placed upon it prior to the accident * * *." (emphasis supplied)

The fundamental flaw in defendant's argument is its dependence upon the erroneous postulate that the assumed risk doctrine applies whenever a plaintiff either knows or should know of the risk. That is just not so, and, except in unusual circumstances, a plaintiff is not deemed to have assumed the risk of conditions of which he is ignorant. *Calanchini* v. *Bliss*, 88 F.2d 82 (9th Cir. 1937); *Guerrero* v. *Westgate Lumber Co.*, 164 Cal. App.2d 612, 331 P.2d 107 (1958); *Shanney* v. *Boston Madison Square Garden Corp.*, 296 Mass. 168, 5 N.E.2d 1 (1936).

"Knowledge of the risk," the court said in *Cincinnati, N. O. & T. P. Ry.* v. *Thompson*, 236 F. 1, 9 (6th Cir. 1916), "is the watchword of the defense of assumption of risk," and in varying forms that expression has since been used

by the textwriters. 2 Harper & James, *Torts* §21.2 at 1168 (1956); Prosser, *Torts* §68 at 447 (4th ed. 1971). The Restatement rule is to the same general effect. It says: "Except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he *then knows* of the existence of the risk and appreciates its unreasonable character." 2 Restatement (Second) *Torts* §496D at 574 (1965) (emphasis supplied). And defendant itself, perhaps unwittingly, appears to agree that a plaintiff cannot be deemed to have assumed a risk unless he knew it existed.[3]

Moreover, in deciding whether a plaintiff knew of and understood the extent of the risk he incurred, the standard is subjective and is keyed to "what the particular plaintiff in fact sees, knows, understands and appreciates." 2 Restatement (Second) *Torts, supra,* §496D, comment *c* at 575. *Shufelberger* v. *Worden,* 189 Kan. 379, 369 P.2d 382 (1962); *Dean* v. *Martz,* 329 S.W.2d 371 (Ky. 1959); *Stotzheim* v. *Djos,* 256 Minn. 316, 98 N.W.2d 129 (1959); *Aldes* v. *St. Paul Ball Club, Inc.,* 251 Minn. 440, 88 N.W.2d 94 (1958). That standard differs from the objective standard which is concerned with how in the particular case the hypothetical reasonable man of ordinary prudence would have acted. The subjective standard is applied to assumed risk; the objective, where contributory negligence is the issue. Here defendant confuses the two. His invocation of the assumed

---

[3] We find defendant's acquiescence in its citation of *Schiano* v. *McCarthy Freight System, Inc.,* 75 R. I. 253, 65 A.2d 462 (1949), which in its brief it says contains "[p]erhaps the clearest exposition of the doctrine." The excerpt it quotes from that case reads: "But the doctrine of assumed risk is not confined to the relation of master and servant. * * * Conceivably it could be applicable to a situation such as the instant one notwithstanding the nonexistence of the relation of master and servant, provided the facts in evidence disclose the existence of a risk obviously dangerous, *known to and voluntarily incurred by the plaintiff,* and which was the proximate cause of his injury." (emphasis supplied) *Id.* at 258, 65 A.2d at 464-65.

risk doctrine entitled him only to a charge applying the subjective standard rather than the objective standard incorporated in his request. It was therefore not error for the trial justice to refuse the assumed risk instruction requested by defendant.

We turn next to defendant's contention that certain remarks by plaintiff's counsel were so prejudicial and so out of order that it was error for the trial justice not to grant its motion to take the case from the jury and to pass it. The transcript, however, fails to disclose the allegedly provocative comments, and their absence makes it impossible for us to decide whether fundamental fairness required that the case be passed. Defendant's contention with respect to the prejudicial effect of undisclosed comments by opposing counsel must therefore be summarily rejected. *See Surber* v. *Pearce,* 97 R. I. 40, 47, 195 A.2d 541, 544 (1963).

Finally, we come to a contention that relates only to the father's case. He had incurred obligations of $6,564.35 for the medical care and treatment provided his son, and the foreman of the jury, when he announced the verdict in the father's case, said: "George D'Andrea, Sr., six thousand five hundred and sixty-four dollars and thirty-five cents, medical expenses incurred for George, Jr. during his illness." Obviously, nothing was included in that verdict for the father's loss of his child's services. That omission prompted the trial justice to grant the father's motion for a new trial on the question of damages only, unless defendant consented to an additur of $4,914. In his judgment the father was entitled to recover what the son, if uninjured, could have earned during the balance of his minority, and in computing the amount of the additur he allowed the father $54 a week for one year of the son's total disability and $27 a week for 18 months of his partial disability.

The defendant in challenging the additur does not fault either the amount or the way it was computed. Instead, it

argues that at the time of the injury the son's employment was casual, that it was not intended to extend beyond the school vacation period, that it would have been voluntarily terminated when the college year commenced in the fall, and that in those circumstances to allow the father to extend his son's employment beyond its expected duration would be to permit him "to reap a windfall at the expense of the defendant Sears, Roebuck and Co."

We find no merit in defendant's argument. The father's right was to recover for the impairment or diminution of his minor child's earning capacity, and the measure was what the child, if uninjured, would have been capable of earning during his minority irrespective of whether he had a history of prior earnings, and without regard to whether it was anticipated when the accident took place that the child either would or would not be gainfully employed during the remainder of his minority. *Pawnee Farmers Elevator & Supply Co.* v. *Powell,* 76 Colo. 1, 227 P. 836 (1924); *Capriotti* v. *Beck,* 264 Minn. 39, 117 N.W.2d 563 (1962). See *Pritsker* v. *Greenwood,* 47 R. I. 384, 133 A. 656 (1926).

In each case the defendant's appeal is denied and dismissed; in the son's case the judgment appealed from is affirmed; and the father's case is remitted to the Superior Court for a new trial on damages only unless the defendant shall, within the period to be fixed by that court, consent to an additur of $4,914.

Motion for reargument denied.

*Edward I. Friedman,* for plaintiffs.

*Hinckley, Allen, Salisbury & Parsons, Guy J. Wells* and *Thomas D. Gidley,* for Sears, Roebuck and Co., defendant.