376 A.2d 329

SYLVIA L. KENNEDY *et al.* *vs.* PROVIDENCE HOCKEY CLUB, INC.

AUGUST 2, 1977

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. The plaintiffs, Mr. and Mrs. Curtis A. Kennedy, Jr., brought this civil action against the Providence Hockey Club, Inc. (the hockey club). Mrs. Kennedy sought damages for injuries received from a flying hockey puck which struck her in the eye as she and her husband were watching a game at Rhode Island Auditorium; her husband sought consequential damages. The complaint alleged that the hockey club negligently failed to apprise Mrs. Kennedy of the danger and to afford her a safe seat. Additionally, the complaint charged a breach of warranty with respect to an allegedly defective seat.

After both sides had answered interrogatories and the deposition of Mrs. Kennedy had been taken, the hockey club filed a Super. R. Civ. P. 56(c) motion for summary judgment on the ground that there was no genuine issue as to any material fact and that as a matter of law the Kennedys were barred from recovery because they had assumed the risks attendant to hockey matches by taking their seats at the game.

Upon hearing this motion and considering the pleadings, answers to interrogatories, and Mrs. Kennedy's deposition, the trial justice granted the motion for summary judgment. The case is before us now on the Kennedys' appeal from that judgment. We Affirm.

The record[1] discloses the following pertinent facts. On January 25, 1970, Mrs. Kennedy, then unmarried and known as Sylvia Forrest, attended a Providence Reds hockey game with her fiance, Curtis Kennedy, Jr., now her husband. The couple sat in Section F North, Row A, which was the fourth row up from the arena floor. Protection for patrons seated in Section F North consisted of a wooden "dasher" that rose to a height of approximately 18 to 24 inches above the ice plus a 5-foot sheet of ½-inch-thick plexiglass which was attached to the top of the "dasher." This shield protected only those patrons in the first three rows.

During the course of a face-off on the ice near Section F North, the puck was lofted from the ice and struck Mrs. Kennedy over the left eye. She was treated in the first aid room at the auditorium and thereafter she incurred substantial medical expenses and loss of work for several months.

Prior to the injury, she had attended 30 or 40 games at the auditorium with her then-fiance and she had seen many Boston Bruins games on television. During those games she had seen lofted pucks hit the plexiglass as well as go into the crowd. Ordinarily, she and her finace sat at the end of the arena in seats most distant from the ice surface because those seats were least expensive, but because the couple were late in purchasing their tickets for the January 25, 1970 game, they were sitting in Section F North. Those were the only remaining seats.

On appeal the Kennedys argue that we should abandon assumption of the risk as a distinct defense to negligence actions, treat it like contributory negligence, and deem it subsumed by the comparative negligence statute, G.L. 1956 (1969 Reenactment) §9-20-4, as amended by P.L. 1972, ch.

---

[1]Although the docket sheet indicates that the plaintiff Sylvia Kennedy's deposition was filed on October 22, 1974, the complete deposition does not appear in the record. However, pertinent portions of that deposition appear in the appendix to the plaintiffs' Supreme Court brief and as Exhibit A of the defendant's motion for summary judgment filed on October 15, 1974. These portions of the deposition seem to be sufficient for proper review of this case.

18, §1.[2] Because of the conclusion we reach on this question, it is not necessary for us to determine whether this cause of action, which accrued prior to the passage of §9-20-4, is a suit "hereafter brought" within the meaning of the statute.[3] We shall simply assume that it is for the purposes of our discussion.

Before addressing the issue presented, a brief historical detour is in order. First, it goes without saying that assumption of the risk by definition means "voluntary." *See Ogden v. Rabinowitz*, 86 R.I. 294, 134 A.2d 416 (1957); *Gaffney v. New York & N.E.R.R.*, 15 R.I. 456, 7A. 284 (1887).

Secondly, it has long been established in Rhode Island that no distinction is made between the doctrine of assumption of the risk and the maxim *volenti non fit injuria* (he who consents cannot receive an injury). Accordingly, the doctrine is not limited to master-servant relationships, but exists as a potential defense in all negligence actions. *Schiano v. McCarthy Freight System, Inc.*, 75 R.I. 253, 65 A.2d 462 (1949). Our broad interpretation of the rule is to be distinguished from some jurisdictions where the doctrine and the maxim have been separately applied, and such distinction has caused unfortunate misapplication of terms and concomitant confusion. *See, e.g. Lyons v. Redding Constr. Co.*, 83 Wash. 2d 86, 515 P.2d 821 (1973).

Thirdly, and most recently, we have discussed at length

---

[2]"9-20-4. Comparative negligence. — In all actions hereafter brought for personal injuries, or where such injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property, or person having control over the property may not have been in the exercise of due care shall not bar a recovery, but damages shall be diminished by the finder of fact in proportion to the amount of negligence attributable to the person injured, or the owner of the property or the person having control over the property."

[3]The puck struck Mrs. Kennedy on January 25, 1970. The comparative negligence statute became effective in July 1971, and this litigation was commenced in January 1972.

*Armstrong v. Polaski*, 116 R.I. 661, 360 A.2d 558 (1976), although involving the retroactivity of G.L. 1956 (1969 Reenactment) §9-20-4, as amended by ch. 18, §1, turned on the fact that the parties had stipulated that §9-20-4 would not govern. The question is, therefore, still open.

the difference between assumption of the risk and contibutory negligence. *D'Andrea* v. *Sears, Roebuck & Co.*, 109 R.I. 479, 287 A.2d 629 (1972). The defendant in that case argued that assumption of the risk bars recovery where a plaintiff either knew or should have known of the risk he assumed. We rejected that contention, however, and noted that "in deciding whether a plaintiff knew of and understood the extent of the risk he incurred, the standard is subjective and is keyed to 'what the particular plaintiff in fact sees, knows, understands and appreciates.' " *Id.* at 487, 287 A.2d at 633. This subjective standard is to be applied to assumption of the risk cases and is to be distinguished from an objective standard "which is concerned with how in the particular case the hypothetical reasonable man of ordinary prudence *would* have acted." *Id.* (emphasis added). The objective criterion is to be applied where contributory negligence is in issue. *Id.* Thus, we have limited the application of the assumption of the risk doctrine to those situations where the claimant had actual knowledge of the hazard. Having so defined and limited the defense, it seems to us that our state is spared the confusion which the Kennedys claim reigns supreme in those jurisdictions which recognize the doctrine in its full force.

With this in mind, we turn now to the question before us: whether the doctrine of assumption of the risk is to be construed as within the intendment of §9-20-4. If so, the foregoing analysis would serve little purpose other than to place various legal propositions in their respective pigeonholes. However, for the reasons which follow, we conclude that §9-20-4 neither diminishes the validity of assumption of the risk as a defense to negligence actions nor makes it a mere mitigating factor in assessing liability.

At the outset we readily concede that other jurisdictions dealing with comparative negligence statutes have merged assumption of the risk with contributory negligence and thus freed plaintiffs subject to the former as well as the latter defense from the harshness of the "all-or-nothing" rule.

*Li* v. *Yellow Cab Co.*, 13 Cal. 3d 804, 532 P.2d 1226, 119 Cal. Rptr. 858 (1975); *Wilson* v. *Gordon,* 354 A.2d 398 (Me. 1976); *Springrose* v. *Willmore,* 292 Minn. 23, 192 N.W.2d 826 (1971); *Braswell* v. *Economy Supply Co.*, 281 So. 2d 669 (Miss. 1973); *Lyons* v. *Redding Constr. Co.*, *supra.* An examination of these cases reveals that they are premised, at least in part, on the postulate that assumption of the risk and contributory negligence overlap to an extent. So far as these doctrines overlap, courts have deemed them the same for purposes of comparative negligence statutes. However, because we do not accept the premise that these principles overlap, we reach a different conclusion.

As we have defined assumption of the risk, the concern is with *knowingly* encountering the danger. This is to be contrasted with *negligently* encountering a risk and falling victim, at one time in our legal history, to the defense of contributory negligence. It seems to us that one who "sees, knows, understands and appreciates" what he is doing, *D'Andrea* v. *Sears, Roebuck & Co.*, *supra,* is worlds apart from one who unwittingly and unsuspectingly falls prey to another's negligence. In the former instance the plaintiff can be said to have consented to the possibility of harm, whereas in the latter situation he has failed to assess accurately his situation and the ramifications of his own action.

Where one knowingly accepts a dangerous situation, he essentially absolves the defendant of creating the risk or, put another way, the duty the defendant owes the plaintiff is terminated. For example, where a plaintiff traditionally pleads negligence and a defendant responds with contributory negligence, the plaintiff can still plead last clear chance because the defendant, despite the plaintiff's own negligence, still owes a duty to him. But where a plaintiff pleads negligence and a defendant pleads assumption of the risk, that is the end of the chain, because once the plaintiff accepts the risk, the defendant no longer owes a duty to him.

In our understanding, then, contributory negligence and

assumption of the risk do not overlap; the key difference is, of course, the exercise of one's own free will in encountering the risk. Negligence analysis, couched in reasonable man hypotheses, has no place in the assumption of the risk framework. When one acts knowingly, it is immaterial whether he acts reasonably. The postulate, then, that assumption of the risk is merely a variant of contributory fault, is not, to our minds, persuasive. Accordingly, it is our determination that §9-20-4 does not affect the validity of assumption of the risk as a complete bar to recovery.

Having determined that the doctrine is still viable, we shall apply it to the facts at bar. While assumption of the risk and contributory negligence are generally issues for juries to decide, we have held that where the facts suggest only one reasonable inference, the trial justice may properly treat the question as a matter of law. *See Garris* v. *Gloss*, 111 R.I. 453, 457, 303 A.2d 765, 768 (1973). In the case before us, Mrs. Kennedy had attended numerous hockey games and was familiar with the flying-puck syndrome. The only reasonable inference suggesting itself to us is that she knew there was a risk that the puck would take flight and come to rest somewhere in the crowd. Furthermore, the fact that the only seats available to the affianced couple were in Section F North does not make the purchase of the seats any less voluntary. Having voluntarily and knowingly encountered the risk, she can be said to have assumed it.

The Kennedys next claim that even if there was no question of fact in the assumption of the risk issue, that doctrine is not a defense to their breach of warranty and products liability claims. Therefore, they say, there were material issues which should have gone to the jury. While this portion of their logic is accurate, *Young* v. *Coca-Cola Bottling Co.*, 109 R.I. 458, 287 A.2d 345 (1072); *Ritter* v. *Narragansett Elec. Co.*, 109 R.I. 176, 283 A.2d 255 (1971), it avails them nothing. Mrs. Kennedy's purchase of a ticket to sit in Seat 4, Row A, of Section F North is neither a transaction in goods supporting a breach of warranty claim nor a

"product" within the meaning of products liability. Accordingly, we find no error in the trial justice's grant of summary judgment.

The plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Gunning, LaFazia & Gnys, Inc., Robert K. Mills,* for plaintiffs.

*Martin M. Zucker, Thomas D. Pucci,* for defendant.