May 1, 2023

| | | |
|---|---|---|
| Raymond D. Burt, Sr. | : | No. 2021-243-Appeal. |
| | | No. 2021-244-Appeal. |
| v. | : | (PC 11-463) |
| | | |
| John C. Furtado et al. | : | |

| | | |
|---|---|---|
| U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset – Backed Pass – Through Certificates, Series 2005-K510, Series 2006-E | : | No. 2021-245-Appeal. No. 2021-246-Appeal. (PC 16-1572) |
| | | |
| v. | : | |
| | | |
| Raymond D. Burt et al. | : | |

| | | |
|---|---|---|
| Tammy L. Lacoste | : | No. 2021-247-Appeal. (PC 13-3802) |
| | | |
| v. | : | |
| | | |
| John C. Furtado et al. | : | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| Raymond D. Burt, Sr. | : | No. 2021-243-Appeal. |
| | | No. 2021-244-Appeal. |
| v. | : | (PC 11-463) |
| | | |
| John C. Furtado et al. | : | |

| | | |
|---|---|---|
| U.S. Bank National Association, as | : | No. 2021-245-Appeal. |
| Trustee for Residential Asset | | No. 2021-246-Appeal. |
| Securities Corporation, Home | | (PC 16-1572) |
| Equity Mortgage Asset – Backed | | |
| Pass – Through Certificates, Series | | |
| 2005-K510, Series 2006-E | | |
| | | |
| v. | : | |
| | | |
| Raymond D. Burt et al. | : | |

| | | |
|---|---|---|
| Tammy L. Lacoste | : | No. 2021-247-Appeal. |
| | | (PC 13-3802) |
| v. | : | |
| | | |
| John C. Furtado et al. | : | |

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.** The appellants, Raymond D. Burt and Tammy L. Lacoste, appeal from the grant of six motions for summary judgment in three underlying cases. They contend that the motion justice erred by ordering reformation of the warranty deeds of both Mr. Burt and Ms. Lacoste and the

- 1 -

mortgage deed of Mr. Burt. That order of reformation was based on (1) the uncontested fact that the warranty deeds and the mortgage deed did not reflect the intent of the parties and (2) the inference that that fact was the product of mutual mistake. These consolidated appeals came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in these appeals should not be summarily decided. After considering the parties' written and oral submissions and after carefully reviewing the record, we are of the opinion that cause has not been shown and that these appeals may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgments of the Superior Court.

# I

## Facts and Travel[1]

In August 2005, Mr. Burt entered into a purchase and sales agreement with Dorothy Tondreau to purchase a piece of property located at 15 Standring Street, Cumberland, Rhode Island. In anticipation of that real estate closing, he obtained a mortgage in the amount of $189,000 from Homecomings Financial, LLC

---

[1] As a result of the fact that we are confronted with three separate civil actions and a multitude of counts, the "Facts and Travel" section of this opinion will necessarily be somewhat lengthy. Nevertheless, in spite of the complex "travel" of these consolidated appeals (that complexity being largely the result of what we deem to be certain inappropriate counts in the appellants' pleadings), it will become clear that the appeal itself can be resolved in a rather straightforward manner.

(Homecomings Financial).  In the same time frame, Ms. Lacoste entered into a separate purchase and sales agreement with Ms. Tondreau to purchase the undeveloped piece of property at 19 Standring Street, which is adjacent to 15 Standring Street.

In preparation for the two closings, Ms. Tondreau's attorney prepared a warranty deed reflecting the conveyance from Ms. Tondreau to Mr. Burt and another warranty deed reflecting the conveyance from Ms. Tondreau to Ms. Lacoste.  The warranty deeds contained the proper legal descriptions of the respective properties, indicating that the property to be conveyed to Mr. Burt was lot 23 of the "Plan of Bluestone" and that the property to be conveyed to Ms. Lacoste was lots 21 and 22 of the "Plan of Bluestone."

Subsequently, however, while reviewing the warranty deeds, an employee of Nationwide Title & Escrow Company, Inc. (Nationwide) changed the legal descriptions of the real estate being conveyed.[2]  As a result, one warranty deed indicated that lot 21 of the "Plan of Bluestone" was being conveyed to Mr. Burt, while another warranty deed indicated that lots 22 and 23 of the "Plan of Bluestone" were being conveyed to Ms. Lacoste.  Mr. Burt's mortgage deed also

---

[2]    The record does not make it entirely clear which person employed by Nationwide allegedly made the erroneous changes in the legal descriptions—John C. Furtado (an attorney in the employ of Nationwide) or some other employee. For the purposes of these consolidated cases, however, that regrettable lack of clarity does not affect our analysis of the legal issues.

incorrectly described the 15 Standring Street property as lot 21 of the "Plan of Bluestone."

At the closing on September 20, 2005, which was conducted by John C. Furtado (an attorney in the employ of Nationwide and who was named as a defendant in most of the cases discussed *infra*), Ms. Tondreau signed the warranty deeds without recognizing the errors as to the descriptions of the properties. Similarly, Mr. Burt signed his mortgage deed, and both he and Ms. Lacoste signed their respective warranty deeds without recognizing that the property descriptions were incorrect. The warranty deeds and the mortgage deed, all containing the incorrect property descriptions, were recorded on September 22, 2005.

Nationwide, acting as an agent for Fidelity National Title Insurance Company, Inc. (Fidelity), issued the following title insurance policies: (1) to Mr. Burt, insuring that "he had a fee simple interest, subject only to his mortgage to Homecomings;" (2) to Homecomings Financial, insuring that "it would have a valid first mortgage * * * at the conclusion of Burt's purchase of [15 Standring Street];" and (3) to Ms. Lacoste, insuring that "she had a fee simple interest, free and clear of all encumbrances." Each of the three title insurance policies was issued with the incorrect legal descriptions of the above-referenced properties.

Mr. Burt and Ms. Lacoste proceeded to take possession of the 15 Standring Street and the 19 Standring Street properties, respectively. Additionally, it is

uncontested that "both the Town of Cumberland and the local fire district commenced in 2006 to send annual bills for *ad valorem* taxes assessed against the [properties]," which taxes Mr. Burt and Ms. Lacoste paid.

Towards the end of 2008 or the beginning of 2009, Mr. Burt defaulted on his mortgage loan payments. Thereafter, on March 27, 2009, Harmon Law Offices, P.C. (Harmon) informed Mr. Burt by letter that it had been retained by GMAC Mortgage, LLC (GMAC) to foreclose on the mortgage. In the course of preparing to foreclose on Mr. Burt's property, Harmon discovered that the legal descriptions of the properties in one or more of the warranty deeds were incorrect, as was the legal description in Mr. Burt's mortgage deed. Harmon then suspended the foreclosure proceedings and filed a claim with Fidelity on behalf of GMAC pursuant to the lender's title insurance policy.

Fidelity proceeded to contact Nationwide in an effort to determine what might be done to correct the erroneous descriptions. As a result, in August 2009, Nationwide substituted the correct legal descriptions for the erroneous ones. Then, without informing Mr. Burt, Ms. Lacoste, or Ms. Tondreau about those substitutions, an employee of Nationwide re-recorded the updated warranty deeds as well as Mr. Burt's mortgage deed in the Land Evidence Records of the Town of Cumberland.

In view of the above-described facts, Mr. Burt, Ms. Lacoste, and U.S. Bank, N.A. (U.S. Bank)[3] each chose to commence individual civil actions in the Providence County Superior Court. In due course, six motions for summary judgment were granted, all culminating in the consolidated appeals before this Court.[4]

## A

### The Three Superior Court Cases

### 1. The Burt Case (PC 11-463)

Although this civil action was actually commenced on January 26, 2011, the relevant complaint for our purposes is the third amended complaint (the complaint),[5] which was filed on September 28, 2017 and named as defendants Nationwide, Mr. Furtado, Homecomings Financial, Fidelity, GMAC, and U.S. Bank. In Count One, Mr. Burt sought a judgment declaring that the re-recorded mortgage deed is void because it was not "signed or acknowledged" by him; he also sought an injunction preventing foreclosure of the 15 Standring Street

---

[3]  U.S. Bank was the holder of Mr. Burt's mortgage deed and the owner of the associated promissory note.

[4]  The three Superior Court cases and the eventual six motions for summary judgment are described *infra.*

[5]  We note with dismay and disapproval that said third amended complaint contains some eighty separate paragraphs. *See Fiorenzano v. Lima*, 982 A.2d 585, 589 (R.I. 2009) (commenting on "the inappropriately prolix nature of the complaint in [that] case"); *see also id.* at n.7.

property. In Count Two, Mr. Burt alleged that the alteration of the warranty deeds in 2009 constituted forgery. In Count Three, Mr. Burt alleged that the 2005 mortgage deed and the accompanying promissory note are void because the re-recordation "constituted a renunciation, abandonment, vitiation, destruction, and voiding of the mortgage * * * and the note secured thereby."

In Count Four, Mr. Burt sought damages against Nationwide for its failure to procure title insurance. In Count Five, Mr. Burt alleged that Nationwide and Mr. Furtado were negligent with respect to the 2005 preparation of his warranty deed and mortgage deed. In the first of the two counts entitled "CLAIM SIX," Mr. Burt alleged that all the named defendants were negligent with respect to their actions relating to the 2009 corrections. In the second of the two counts entitled "CLAIM SIX - RESCISSION," Mr. Burt alleged that, "based upon the fraud perpetrated upon Burt by Furtado, Nationwide Title and its employees" and their "material misrepresentation * * * [,] the real estate transfer deed of Tondreau, the promissory note between Burt and Homecomings and the mortgage deed from Burt to Homecomings must be rescinded." Finally, in Count Seven, Mr. Burt alleged a violation of the Rhode Island Deceptive Trade Practices Act.

In response, Fidelity filed an answer denying Mr. Burt's claims; it also filed a cross-claim for contribution and indemnification against Nationwide and Mr. Furtado. Similarly, U.S. Bank, Homecomings Financial, and GMAC filed an

answer denying Mr. Burt's claims; they also filed cross-claims against Nationwide and Mr. Furtado for contribution and indemnification and alleging legal malpractice on the part of Mr. Furtado, negligence against Nationwide, and breach of contract against Nationwide and Mr. Furtado. Nationwide and Mr. Furtado filed an answer denying the pertinent allegations of Mr. Burt's complaint. Nationwide and Mr. Furtado also filed cross-claims for contribution, indemnification, and negligence against U.S. Bank, Homecomings Financial, and GMAC; and they sought equitable relief against Mr. Burt—*viz.*, that he be required to sign the above-referenced corrected documents.

## 2. The Lacoste Case (PC 13-3802)

On July 31, 2013, Ms. Lacoste filed a complaint against Nationwide, Mr. Furtado, and Fidelity. In Count One, Ms. Lacoste sought a judgment declaring that the 2009 warranty deed was void because it was not "signed or acknowledged" by Ms. Tondreau. In Count Two, she alleged that the "material alteration of the Deed after it was recorded in 2005 * * * was done with the intent to deceive and defraud those persons interested in and relying upon the accuracy and integrity of the Cumberland land evidence records constitut[ing] forgery * * *." In Count Three, Ms. Lacoste sought damages against Nationwide for its failure to procure title insurance. In Count Four, she alleged that Nationwide was negligent for having changed the legal descriptions of her property in 2005. Finally, in Count Five,

entitled "Claim on Policy," Ms. Lacoste alleged that she "is entitled to compensation by Fidelity * * * as a result of her not owning the premises the title to which is insured by [her title] Policy."

In due course, each of the named defendants filed an answer denying the applicable claims against them. Thereafter, Fidelity amended its answer to include cross-claims for indemnification and contribution against Nationwide and Mr. Furtado.

### 3. The U.S. Bank Case (PC 16-1572)[6]

On April 8, 2016, U.S. Bank filed a complaint against Mr. Burt, Ms. Lacoste, Bank of America, and Joseph F. Penza, Jr.[7] On May 6, 2016, U.S. Bank filed an amended complaint, in Count One of which it sought "reformation of the warranty deeds executed by Dorothy Tondreau to * * * Burt and Lacoste to substitute and include the correct legal descriptions" as well as "reformation of the mortgage deed executed by * * * Burt to substitute and include the correct legal description * * *."

In Count Two, U.S. Bank sought: (1) "a declaration that the warranty deed to the defendant Burt * * * as reformed, confirms and establishes that title to lot numbered Twenty-three (23), 15 Standring St[reet], Cumberland, Rhode Island is

---

[6]     In due course, the U.S. Bank case was consolidated with the Burt case.

[7]     Mr. Penza was named as a defendant in his capacity as the administrator of the estate of Ms. Tondreau, who had passed away on July 21, 2011.

fully vested in defendant Burt only and has been since the date of execution of the deed, September 20, 2005;" (2) "a declaration that the warranty deed to the defendant Lacoste * * * as reformed, confirms and establishes that title to lots numbered Twenty-one (21) and Twenty-two (22) on Standring St[reet], Cumberland, Rhode Island is fully vested in defendant Lacoste only and has been since the date of execution of the deed, September 20, 2005;" and (3) "a declaration that the mortgage deed executed by the defendant Burt * * * as reformed, confirms and establishes that the mortgage encumbers lot numbered Twenty-three (23) and that [U.S. Bank] is the holder of a valid first mortgage in lot numbered Twenty-three (23), superior to all other liens and encumbrances * * * since the date of the execution of the mortgage, September 20, 2005."

On August 12, 2016, Mr. Burt and Ms. Lacoste jointly answered the complaint, denying that there was a mutual mistake and asserting that U.S. Bank was not entitled to reformation. On September 28, 2017, they subsequently amended their answer to include a counterclaim against U.S. Bank seeking rescission of "all transactions," based on a misrepresentation of a material fact; and they also filed a cross-claim against Mr. Penza (the estate administrator) seeking rescission of the warranty deeds, the mortgage deed, and the promissory note on the same basis.

- 10 -

# B

## The Six Motions for Summary Judgment

## 1. The Motion for Summary Judgment of U.S. Bank as Plaintiff in PC 16-1572

On January 31, 2019, U.S. Bank filed a motion for summary judgment on both counts of its complaint. A hearing on the motion was held on May 8, 2019, and a bench decision granting the motion was issued on January 31, 2020. The motion justice held that the original warranty deed and the mortgage deed had materially failed "to correctly reflect the intent of the parties and that the wrong legal description was made part of those instruments and that there was a mutual mistake." She reasoned that Mr. Burt "intended to buy 15 Standring Street and did buy 15 Standring Street but for the erroneous legal description." She further reasoned that Mr. Burt "validated the terms of the note and mortgage through his conduct"—including making "payments under the note and mortgage for many years."

Accordingly, the motion justice ordered that the original warranty deeds and Mr. Burt's mortgage deed be reformed to reflect the correct property descriptions. The motion justice also granted U.S. Bank's request for a declaration to the effect that it "can foreclose on the 2005 reformed mortgage." On June 14, 2021, final judgment entered in favor of U.S. Bank as to all counts.

## 2. The Motion for Partial Summary Judgment of U.S. Bank, Homecomings Financial, and GMAC as Defendants in PC 11-463

With respect to Mr. Burt's third amended complaint in PC 11-463, on January 31, 2019, U.S. Bank, Homecomings Financial, and GMAC filed a motion for partial summary judgment as to Count One (seeking to void Mr. Burt's re-recorded 2009 mortgage deed); Count Three (seeking to void Mr. Burt's 2005 mortgage deed and promissory note); and the second of the two counts entitled "CLAIM SIX" (seeking rescission of "all transactions" on the basis of a "Misrepresentation of a Material Fact"). A hearing on the motion was held on May 8, 2019, and a bench decision granting the motion was issued on January 31, 2020.

The motion justice first held that Counts One and Three were moot because, in the U.S. Bank case (PC 16-1572), she had ordered reformation of the 2005 warranty deed and the mortgage deed. The motion justice next addressed the second Count Six of Mr. Burt's third amended complaint, which alleged fraud and sought rescission of: (1) the 2005 warranty deed; (2) the promissory note between Mr. Burt and Homecomings Financial; and (3) the mortgage deed from Mr. Burt to Homecomings Financial. The motion justice held that there was "no fraud in 2005," and she then concluded that "there can be no claim for rescission based on fraud when there was no fraud."

On June 14, 2021, final judgment as to Counts One, Three, and Six (Rescission) entered in favor of U.S. Bank, Homecomings Financial, and GMAC.[8]

### 3. The Motion for Summary Judgment of Fidelity as Defendant in PC 11-463

On April 4, 2019, Fidelity filed a motion for summary judgment as to all counts in Mr. Burt's third amended complaint. A hearing on the motion was held on October 30, 2019, and a bench decision granting the motion was issued on January 31, 2020. The motion justice held that, pursuant to the title insurance policy, "any claim that the insured makes against the insurer must be made under the policy and be subject to its terms." She reasoned that, because Mr. Burt had failed to make a claim under his policy, "regardless of what caused the incorrect legal description or how the parties want to categorize that incorrect legal description, [Mr. Burt] still has not alleged a claim under the insurance policy because neither mutual mistake [n]or drafting errors are listed among those types of claims for which Fidelity can be held liable."

On June 14, 2021, final judgment entered in favor of Fidelity as to all claims asserted against it.

---

[8] The first of the two counts in Mr. Burt's complaint entitled "CLAIM SIX" (alleging negligence) was not explicitly referred to in the judgment. However, the reasoning of the motion justice concerning the elements of the tort of negligence that is summarized in the next sub-section of this opinion should be noted.

## 4. The Motion for Summary Judgment of Nationwide and Mr. Furtado as Defendants in PC 11-463

On August 25, 2020, Nationwide and Mr. Furtado filed a motion for summary judgment as to all counts in Mr. Burt's third amended complaint. A hearing was held on the motion on December 3, 2020.[9] On that same day, the motion justice first ruled that the law of the case doctrine governed Counts One, Two, Three, and the second Count Six. In granting the parties' motion for summary judgment as to Count Five and the first Count Six (Negligence), the motion justice stated:

> "The real heart of this case as it relates to Nationwide and Mr. Furtado are the negligence counts. And it is absolutely clear that the plaintiff must show a duty owed, a breach of the duty, damages, and that the damages were caused by the defendants' breach. Here, we have an obvious duty. We have an admitted breach of duty. But what we don't have is damages. The damages that Mr. Burt lists as damages flowing from the negligence simply are not. Closing costs, mortgage payments, construction costs, construction materials, none of that has anything to do with the negligence that resulted in Mr. Burt owning land that he didn't -- that he actually didn't own but he thought he owned and he acted as if he owned it and utilized it for a number of years. There simply is no connection between those costs or expenses and the defendants' negligence here. There are no damages that result from that negligence."

---

[9] Prior to the hearing, Mr. Burt voluntarily dismissed with prejudice Counts Four and Seven in his third amended complaint.

On June 14, 2021, final judgment entered in favor of Nationwide and Mr. Furtado as to Counts One, Two, Three, Five, and the first Count Six.[10]

## 5. The Motion for Summary Judgment of Fidelity as Defendant in PC 13-3802

On August 13, 2020, Fidelity filed a motion for summary judgment as to all pertinent counts in Ms. Lacoste's complaint. A hearing on that motion was held on December 3, 2020. At the hearing, Ms. Lacoste confirmed that she was dismissing Counts One and Two against Fidelity. Accordingly, the motion justice addressed the only remaining claim against Fidelity, Count Five, entitled "Claim on Policy."

First, the motion justice recognized that Count Five "simply alleges that Lacoste does not own the premises described in the owner's title policy that was issued to her by Fidelity." She added that Count Five "further alleges that Lacoste is entitled to compensation by Fidelity as a result of her not owning the premises which were insured by the policy; and, therefore, Lacoste demands judgment for the amount stated in the policy, plus interest and costs provided by law." However, the motion justice then held that Count Five was moot because good title had been restored to Ms. Lacoste pursuant to the reformation of the warranty deeds that was ordered in the U.S. Bank case. Accordingly, the motion justice granted

---

[10] The final judgment makes no explicit mention of the second Count Six, wherein Mr. Burt sought rescission of the challenged deeds and the promissory note. It should be noted, however, that the motion justice did rule that that count was governed by the law of the case doctrine.

- 15 -

Fidelity's motion for summary judgment. On June 14, 2021, final judgment entered in favor of Fidelity as to all counts against it.

**6. The Motion for Summary Judgment of Nationwide and Mr. Furtado as Defendants in PC 13-3802**

On December 29, 2020, Nationwide and Mr. Furtado filed a motion for summary judgment as to all pertinent counts in Ms. Lacoste's complaint. A hearing on that motion was held on May 5, 2021.[11] On that same day, the motion justice first held that Count One, which sought a declaration that the 2009 warranty deed be voided, was moot because she had already ordered that the 2005 warranty deed be reformed. The motion justice then granted summary judgment as to Count Two, which alleged that the 2009 re-recordation of the updated warranty deed constituted forgery in that it purportedly "was done with the intent to deceive and defraud those persons interested in and relying upon the accuracy and integrity of the Cumberland land evidence records * * *." In granting the motion for summary judgment of Nationwide and Mr. Furtado as to Count Two, the motion justice held that there was "zero evidence that anyone did anything with an intent to deceive anyone."

As to Count Four, which sought damages for negligence, the motion justice first observed that Ms. Lacoste had indicated that her damages consisted of

---

[11] Prior to the hearing, Ms. Lacoste voluntarily dismissed with prejudice Counts Three and Five as to Nationwide and Mr. Furtado.

"closing costs, interest, the money that she has paid on property taxes, [and] attorneys' fees, without specifying what those attorneys' fees are."  She then reasoned:

> "[T]here could have been damages that Ms. Lacoste could have incurred in relation to * * * the errors relating to the deed * * *.  But those have not been asserted here. The damages that she would be entitled to would have to do with fixing the error, and the damages that are claimed by [Ms. Lacoste] don't have anything to do with addressing the title problems that were created in 2005 or any of the activities of 2009.  And so, the costs are the -- the things that she's claiming as damages cannot be said to have been caused by Mr. Furtado or Nationwide. Because she cannot demonstrate damages, the negligence claim must fail as a matter of law."

The motion justice then granted Nationwide and Mr. Furtado's motion for summary judgment as to Count Four.

Final judgment entered as to all counts against Nationwide and Mr. Furtado on June 14, 2021.

## C

### The Consolidated Appeals

Timely appeals having been filed as to all of the above-referenced judgments, said appeals were consolidated by order of this Court.

## II

## Issues on Appeal

The only issues properly before this Court are whether the motion justice erred (1) when she concluded that the 2005 warranty deeds and mortgage deed failed to reflect the intent of the parties and were the product of a mutual mistake and (2) when she proceeded to order that those deeds be reformed so as to reflect the correct property descriptions.

## III

## Standard of Review

It is well established that "[t]his Court reviews the granting of a motion for summary judgment on a *de novo* basis." *Air Distribution Corp. v. Airpro Mechanical Company, Inc.*, 973 A.2d 537, 540 (R.I. 2009); *see also Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 121 (R.I. 2009); *Cullen v. Lincoln Town Council*, 960 A.2d 246, 248 (R.I. 2008). And while "reviewing a hearing justice's decision to grant summary judgment, this Court employs the same standards as were used by the hearing justice." *Air Distribution Corp.*, 973 A.2d at 540; *see also O'Sullivan v. Rhode Island Hospital*, 874 A.2d 179, 182 (R.I. 2005). At the conclusion of that reviewing process, we "will affirm a hearing justice's grant of summary judgment if we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law."

*Narragansett Electric Company v. Saccoccio*, 43 A.3d 40, 44 (R.I. 2012) (internal quotation marks omitted); *see also Credit Union Central Falls v. Groff*, 966 A.2d 1262, 1267 (R.I. 2009). It is also important to bear in mind that "the party opposing a summary-judgment motion has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Credit Union Central Falls*, 966 A.2d at 1267 (internal quotation marks omitted); *see also Mutual Development Corporation v. Ward Fisher & Company, LLP*, 47 A.3d 319, 323 (R.I. 2012); *Air Distribution Corp.*, 973 A.2d at 540-41. In addition, "[w]here the facts suggest only one reasonable inference, the [motion] justice may properly treat the question as a matter of law." *HK & S Construction Holding Corp. v. Dible*, 111 A.3d 407, 411-12 (R.I. 2015) (quoting *Shappy v. Downcity Capital Partners, Ltd.*, 973 A.2d 40, 45 (R.I. 2009)); *see also Kennedy v. Providence Hockey Club, Inc.*, 119 R.I. 70, 77, 376 A.2d 329, 333 (1977).

## IV

## Analysis

The primary issue before us is whether the motion justice erred in ordering reformation of the two warranty deeds and the mortgage deed.[12]

---

[12]    With the exception of their contention concerning the "scrivener's error" issue (which we address *infra*), in their statement filed pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure, Mr. Burt and Ms.

There is a presumption that "a written instrument as drawn and executed, especially a deed, correctly states the real intent of the parties." *Vanderford v. Kettelle*, 75 R.I. 130, 142, 64 A.2d 483, 488 (1949). However, there are occasions when judicial reformation of such an instrument is appropriate. Such judicial reformation of a deed or similar document is appropriate only when there has been a mutual mistake on the part of both parties. *See, e.g.*, *Hopkins v. Equitable Life Assurance Society of United States*, 107 R.I. 679, 685, 270 A.2d 915, 918 (1970) ("To warrant reformation it must appear that by reason of mistake, common to both parties, their agreement fails in some material respect correctly to reflect their prior completed understanding."); *see also Gorman v. Gorman*, 883 A.2d 732, 740 (R.I. 2005) ("For a contract to be subject to judicial reformation, the court must first find a mutual mistake."); *Vanderford*, 75 R.I. at 142, 64 A.2d at 489.[13] *See generally* Joseph M. Perillo, *Contracts* § 9.31 at 342-43 (7th ed. 2014) ("[M]isunderstanding, or mistake can result in a record that does not reflect the

---

Lacoste do not raise any issues as to the granting of Fidelity's motion for summary judgment in either the Burt case or the Lacoste case. They also do not address the dismissal of their negligence counts against Nationwide. As such, we need not and shall not address those issues in this opinion. *See, e.g.*, *Estate of Meller v. Adolf Meller Co.*, 554 A.2d 648, 654 (R.I. 1989) (stating that this Court expects that "the briefs before us will contain all the arguments that the parties wish us to consider * * *"); *see also McGarry v. Pielech*, 108 A.3d 998, 1004-05 (R.I. 2015).

[13]    "A party seeking reformation * * * must prove a mutual mistake of a material term * * * by clear and convincing evidence." *Merrimack Mutual Fire Insurance Company v. Dufault*, 958 A.2d 620, 624 (R.I. 2008).

parties' agreement. Reformation is the remedy by which records are rectified to conform to the actual agreement of the parties. At the simplest level it is the mechanism for the correction of typographical and other similar inadvertent errors in reducing an agreement to a record.") (footnotes omitted).

Before us, the appellants[14] focus their attention on the requirement that there must be a mutual mistake in the document(s) at issue before reformation can properly be ordered by a trial court. They assert that the motion justice erred in her determination that the 2005 warranty deeds and the mortgage deed failed to reflect the intent of the parties and were the product of mutual mistake. They point out that neither they nor Ms. Tondreau made the underlying mistake; they assert that the "error was caused by Tondreau's escrow agent (Nationwide and Furtado), who, without Tondreau's authority * * * altered the descriptions in the deeds." Mr. Burt and Ms. Lacoste additionally contend that "the existence of mutual mistake is a question of fact," and they assert that the motion justice erred because there was no clear and convincing evidence of a mutual mistake made by the parties.

In response, U.S. Bank, Homecomings Financial, and GMAC[15] assert that the motion justice "properly held that there are no genuine issues as to any material fact and that the Appellees are entitled to judgment as a matter of law as there is no

---

[14]  Mr. Burt and Ms. Lacoste filed a joint Rule 12A statement.

[15]  U.S. Bank, Homecomings Financial, and GMAC filed a joint Rule 12A statement.

- 21 -

question that Burt intended to buy the Property and did buy the Property but for the erroneous legal descriptions." They further assert that, "[a]lthough Nationwide Title caused this mutual mistake between the parties, it does not render the deed or the Mortgage void, as it is evident through the parties' conduct that Burt intended to buy the Property and did buy the Property for which he intended."

Nationwide and Mr. Furtado[16] likewise argue that the motion justice did not err in granting summary judgment against Mr. Burt and Ms. Lacoste because "there is no dispute as to what the intent of the parties was at the time of the closing on September 20, 2005." They further assert that "[t]he fact that the mistake was made by a third party does not render either of the deeds or the mortgage void in this particular case because of the specific intentions of all of the parties, as well as their subsequent actions after the September 20, 2005 closing."

The term "mutual mistake" has frequently been defined by this Court. *See, e.g.*, *Dubreuil v. Allstate Insurance Co.*, 511 A.2d 300, 302-03 (R.I. 1986) ("A mutual mistake is one common to both parties wherein each labors under a misconception respecting the same terms of the written agreement sought to be [reformed]."); *see also Merrimack Mutual Fire Insurance Company v. Dufault*, 958 A.2d 620, 624 (R.I. 2008) ("A mutual mistake is not merely the existence of a common error, but rather involves a shared misconception relating to the parties'

---

[16]   Nationwide and Mr. Furtado filed a joint Rule 12A statement.

intent."); *Nunes v. Meadowbrook Development Co., Inc.*, 824 A.2d 421, 425 (R.I. 2003); *Vanderford*, 75 R.I. at 142, 64 A.2d at 488; *see generally Moffett, Hodgkins, & Clarke Company v. City of Rochester*, 178 U.S. 373, 385 (1900).

As for appellants' argument that the error in the deeds was created by the actions of Nationwide and/or one of its employees and so should not be said to have constituted a mutual mistake made by Mr. Burt or Ms. Lacoste or Ms. Tondreau, the plain blunt fact is that settled law does not support that contention. It is undisputed that, at the time of the closing, Ms. Tondreau intended to sell and Mr. Burt intended to buy the property located at 15 Standring Street and Ms. Tondreau intended to sell and Ms. Lacoste intended to buy the property located at 19 Standring Street.[17]

Mr. Burt and Ms. Lacoste's conduct after the closing further evidenced their intent to purchase, and own, their respective properties. It is uncontested that, during the substantial period of time which passed until the errors in the deeds were discovered, (1) both Mr. Burt and Ms. Lacoste had been paying the taxes assessed by the Town of Cumberland and the local fire district for their respective properties; (2) Mr. Burt had been paying his mortgage payments for approximately four years; and (3) Mr. Burt had removed an existing structure on his property and had begun to construct a new one.

---

[17]    It is undisputed that the warranty deeds and the mortgage deed contained the erroneous legal descriptions for the respective properties.

In our view, it is entirely irrelevant that the actual mistake in the legal descriptions was not made by the parties, but rather by an employee of Nationwide, who was in effect serving as a scrivener.[18] What is determinative is that the mistake became "mutual" at the time when the buyers and the seller signed the respective deeds. The mistake was "mutual" in the sense that all the pertinent parties (Mr. Burt, Ms. Lacoste, and Ms. Tondreau) shared in the mistaken belief that the legal descriptions in the warranty deeds and the mortgage deed were accurate. This concept has been nicely summarized in the venerable and frequently cited opinion from the New York Court of Appeals in the seminal case of *Born v. Schrenkeisen*, 17 N.E. 339 (N.Y. 1888):

> "Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected."[19]
> *Born*, 17 N.E. at 341.

---

[18] It is clear from the record that the changes in the legal descriptions that were made by an employee of Nationwide technically constituted a "scrivener's error," even if Mr. Furtado at his deposition did not endorse that particular terminology and even if those changes were the product of a volitional act by an employee of Nationwide rather than being the result of a mere slip of the pen.

[19] *See also Harris v. Uhlendorf*, 248 N.E.2d 892, 894 (N.Y. 1969); *Parchen v. Chessman*, 164 P. 531, 533 (Mont. 1917) ("When it is said * * * that equity will not lend its aid to reform an instrument for mistake unless it is a mutual mistake, the terms 'mutual mistake' are used in contradistinction to a unilateral mistake or the mistake of one party to the instrument only. If the error occurs through the mistake of the scrivener, it is none the less a mistake * * *."); 27 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 70:93 at 469 (4th ed. 2020) ("In contract law, a scrivener's error, like a mutual mistake, occurs when the

Professor Dan B. Dobbs has made the same point with admirable clarity:

> "The fact that neither of the bargaining parties themselves made the written mistake is no bar to reformation. The mistake of a draftsman, whether he is one of the parties or merely a scrivener, is adequate grounds for relief, provided again that the writing fails to reflect the parties' true understanding. The mistake is 'mutual' in the sense * * * [that] there is a previous agreement to which the [document] may be reformed, and courts have no trouble in agreeing in this situation on reformation." 2 Dan B. Dobbs, *Law of Remedies* § 11.6(1) at 747 (2d ed. 1993).[20]

Although there is no opinion from this Court that articulates precisely the same principle as that articulated in *Born v. Schrenkeisen* and in Professor Dobbs's treatise, it is clear to us (1) that it is a principle that is generally acknowledged in this country and (2) that it is consistent with common sense. *See Peak v. United States*, 353 U.S. 43, 46 (1957) ("That seems to us to be the common sense of the matter; and common sense often makes good law.").

There is uncontested evidence in the record which clearly and convincingly demonstrates that the 2005 warranty deeds and mortgage deed failed to correctly

---

intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error; this permits a court acting in equity to reform an agreement.").

[20]     *See generally* Henry L. McClintock, *Handbook of the Principles of Equity* 260 (2d ed. 1948) (noting, *inter alia*, that "[i]n many cases the mistake is really that of a third party, the scrivener or draftsman who drew the instrument; the only mistake of the parties being in accepting it as a correct expression of their agreement").

express the agreement of the parties and, therefore, were the product of mutual mistake. By reforming the deeds, the motion justice merely made the mortgage deed and the warranty deeds "convey the meaning that both parties intended." *Vanderford*, 75 R.I. at 142, 64 A.2d at 489. Accordingly, we are of the opinion that the motion justice did not err by ordering reformation of the mortgage deed and the warranty deeds.[21] It is further our opinion that summary judgment was appropriately granted with respect to each of the six motions for summary judgment, which the motion justice considered with laudable meticulousness. *See HK & S Construction*, 111 A.3d at 411-12; *see also Deutsche Bank National Trust Company for Registered Holders of Ameriquest Mortgage Securities, Inc. v. McDonough*, 160 A.3d 306, 311 (R.I. 2017) ("[W]here the facts suggest only one reasonable inference, the [motion] justice may properly treat the question as a matter of law.") (internal quotation marks omitted).

---

[21] Mr. Burt and Ms. Lacoste have contended that the existence of mutual mistake *vel non* is a question of fact not to be resolved at the summary judgment stage. However, while the question of mistake in a given document may sometimes be a question of fact requiring a fact-finder to make credibility determinations, the appellants' pleadings in this case foreclose any such need for fact-finding. These pleadings allege over and over again that the deeds at issue contain materially erroneous legal descriptions. That being the case, the Superior Court's decision to order reformation was both appropriate and laudable.

# V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgments of the Superior Court. The record may be returned to that tribunal.

# STATE OF RHODE ISLAND



## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Raymond D. Burt, Sr. v. John C. Furtado et al.<br><br>U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset – Backed Pass – Through Certificates, Series 2005-K510, Series 2006-E v. Raymond D. Burt et al.<br><br>Tammy L. Lacoste v. John C. Furtado et al. |
| **Case Number** | No. 2021-243-Appeal.<br>No. 2021-244-Appeal.  (PC 11-463)<br><br>No. 2021-245-Appeal.<br>No. 2021-246-Appeal.  (PC 16-1572)<br><br>No. 2021-247-Appeal.  (PC 13-3802) |
| **Date Opinion Filed** | May 1, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa E. Darigan |
| **Attorney(s) on Appeal** | For Appellants:<br><br>Mark L. Smith, Esq. |
| | For Appellees:<br><br>Joseph F. Penza, Jr., Esq.<br>Brandon P. Ruggieri, Esq.<br>Zachary W. Berk, Esq. |